**COGNEX CORPORATION, Plaintiff,**

v.

**LEMELSON MEDICAL, EDUCATION & RESEARCH FOUNDATION, Limited Partnership, Defendant.**

**Civil Action No. 98–11979–NMG.**

United States District Court,
D. Massachusetts.

Sept. 21, 1999.

John O. Mirick, James C. Donnelly, Jr., Mirick, O'Connell, DeMallie & Lougee, Worcester, MA, Albert E. Fey, Charles Quinn, Douglas J. Gilbert, Jesse L. Jenner, Fish & Neave, New York City, James C. Donnelly, Jr., for plaintiff.

Douglas Q. Meystre, Fletcher, Tilton & Whipple, Worcester, MA, Louis J. Hoffman, Scottsdale, AZ, Victoria Gruver Curtin, Scottsdale, AZ, for defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Plaintiff Cognex Corporation ("Cognex") filed this patent action against defendant Lemelson Medical, Education & Research Foundation, Limited Partnership ("Lemelson") seeking a declaratory judgment of non-infringement, invalidity and unenforceability. Pending before this Court are the motions of Lemelson to 1) retransfer the case to the Eastern Section of the District of Massachusetts (Docket No. 16) and 2) dismiss the case or transfer it to the District of Arizona (Docket No. 15).

### I. *Background*

Cognex, a Massachusetts corporation, designs, develops and markets machine vision products and systems that are used to replace human observation in a wide range of manufacturing processes. Machine vision, as this Court understands it, refers generally to the use of computer systems to analyze images acquired by a camera or a scanner. In a typical manufacturing application, a video camera captures the image of an item moving along an assembly line and a computer then analyzes that image to determine, for example, whether the item is defective or where to route it next in the assembly process. Cognex holds more than 30 United States patents related to its machine vision products.

Lemelson, a limited partnership organized under Nevada law, is the owner by assignment of approximately 195 unexpired patents and approximately 75 patent applications held by Jerome H. Lemelson,

who died in 1997. Fifteen of those patents are referenced in Cognex's complaint. Lemelson has accused various companies who use Cognex's products (the "Cognex Customers") of infringing its patents. Specifically, Lemelson has sent letters to the Cognex Customers accusing them of infringement, offering licenses and threatening lawsuits if they decline to accept licences.

Lemelson has not directly accused Cognex of infringement and has stated to Cognex and to this Court that it will not bring suit against Cognex. Nevertheless, Cognex alleges that it has been damaged in that 1) it is contractually obligated to indemnify and defend its customers against infringement claims and 2) the threat of an infringement action is deterring potential customers from purchasing Cognex products.

In Count One of its complaint, Cognex seeks a declaratory judgment that its products do not infringe any of Lemelson's patents. Count Two seeks a declaration that Lemelson's patents are invalid. Counts Three and Four seek declarations, respectively, that Lemelson's patents are unenforceable because of inequitable conduct and laches, specifically, its delay in filing continuation applications.

## II. *Motion to Re–Transfer to Eastern Section*

█ Cognex filed its complaint in the Eastern Section of the District of Massachusetts (Boston), and then moved to transfer the case to the Central Section (Worcester), pursuant to Local Rule 40.1(c)(4). Cognex is a Massachusetts corporation with its principle place of business in Natick, Massachusetts, which is in Middlesex County. Lemelson is a limited partnership organized under Nevada law. Because neither party resides in Worcester County, the geographic region that is coterminous with the Central Section, Local Rule 40.1(c)(2) prevented Cognex from filing its complaint in the Central Section.

Local Rule 40.1(c)(4) authorizes the transfer of any case from the Eastern Section to the Central Section of the District upon consent of all parties or upon the motion of any party for good cause shown. Cognex filed its complaint on September 23, 1998 and the case was drawn to Judge Richard G. Stearns. On September 29, 1998, Cognex moved to transfer the case to the Central Section, arguing that Worcester provided a more convenient forum for its employees, counsel and witnesses. Before Lemelson filed any response to the motion, Judge Stearns allowed it by endorsement on October 2, 1998.

Lemelson now asks this Court to retransfer the case to the Eastern Section. Lemelson argues that 1) Cognex's convenience argument does not constitute the "good cause" necessary to justify a transfer to the Central Section and 2) from its perspective, Boston is the more convenient venue.

This Court, however, declines to review Judge Stearns' order or disturb his implicit finding that Cognex has shown good cause to justify the transfer. Lemelson's motion to re-transfer the case to the Eastern Section will therefore be denied.

## III. *Motion to Dismiss or Transfer to Arizona*

Lemelson argues that the instant case should be dismissed for lack of subject matter jurisdiction and for lack of personal jurisdiction over Lemelson. It also argues that Count 3 (inequitable conduct) should be dismissed because Cognex failed to plead it with sufficient particularity and that Count 4, (laches), should be dismissed because it is not legally cognizable. Alternatively, Lemelson asks this Court to transfer the case to the District of Arizona, where it is a plaintiff in a pending patent infringement case against 18 semiconductor companies in which many of the subject patents are at issue.

## A. Personal Jurisdiction

Lemelson argues that its contacts with Massachusetts are insufficient to render it amenable to suit here. In general, a district court must engage in a two-step inquiry to determine whether it can exercise personal jurisdiction over a nonresident defendant. First, the Massachusetts long-arm statute must be examined to determine whether it confers personal jurisdiction over the defendant. Second, this Court must determine whether the exercise of such jurisdiction comports with the Due Process requirements of the federal Constitution. *Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355 (Fed.Cir.1998). Lemelson concedes that if jurisdiction is proper under the Due Process Clause, it will also be found under the Massachusetts long-arm statute. This Court will therefore proceed directly to the Constitutional analysis.

■ In general, the Due Process Clause requires this Court to determine whether the exercise of personal jurisdiction over Lemelson would comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The issue turns on whether Lemelson had sufficient minimum contacts with Massachusetts "such that [it] should reasonably anticipate being haled into court" here. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). As an initial matter, in order to be considered, the contact or contacts must be "purposefully directed at the forum or its residents." *Red Wing*, 148 F.3d at 1359. A single act is sufficient to allow a court to exercise specific jurisdiction over a defendant if the cause of action "arises out of or relates to" that contact. *Burger King*

Corp. v. Rudzewicz, 471 U.S. 462, 472–73, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).[1]

If the minimum contacts test is satisfied, the court must then examine those contacts in light of other factors to determine whether the assertion of personal jurisdiction is reasonable and fair, that is, whether it would comport with the concepts of "fair play and substantial justice." *Id.* at 476, 105 S.Ct. 2174.

Federal Circuit precedent governs the due process inquiry in patent cases. *Red Wing*, 148 F.3d at 1358. In the instant case, the Due Process analysis involves three issues: 1) whether Lemelson purposefully directed its activities at residents of Massachusetts, 2) whether Cognex's cause of action arises out of or relates to those activities and 3) whether the assertion of personal jurisdiction would be reasonable and fair.

■ Cognex argues that the letters sent by Lemelson to Cognex's Customers in Massachusetts accusing them of infringement and offering licenses constitute purposeful contacts with this forum that arise out of or relate to the instant declaratory judgment action. Federal Circuit precedent is clear, however, that such letters, by themselves, are insufficient to satisfy the personal jurisdiction requirements of the Due Process Clause. *Id.* at 1360; *Akro Corporation v. Luker*, 45 F.3d 1541, 1548–49 (Fed.Cir.1995).

In *Red Wing*, the court examined cease and desist letters similar to those sent by Cognex and concluded that, although those letters constituted sufficient minimum contacts with the forum, it was nevertheless unreasonable and unfair to allow them to serve as the basis for exercising personal jurisdiction. *Red Wing*, 148 F.3d at 1360–61. The Court reasoned:

[p]rinciples of fair play and substantial justice afford a patentee sufficient lati-

---

1. Cognex, in its memorandum of law in opposition to the motion to dismiss, relies solely on arguments related to specific jurisdiction. This Court will therefore not address whether the assertion of general jurisdiction over Le-

melson would be proper. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

tude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement.

*Id.*

In addition to the letters, Cognex identifies four other contacts between Lemelson and Massachusetts and argues that they are sufficient to satisfy the Due Process requirements. Specifically, Cognex points to the following facts in support of its claim of personal jurisdiction:

1) Lemelson's attorneys made numerous trips to Massachusetts to deal with companies located here,

2) Lemelson entered into licensing agreements with Massachusetts companies concerning the patents in suit,

3) two of Lemelson's limited partners, Hampshire College and the Massachusetts Institute of Technology ("M.I.T."), are Massachusetts residents and

4) Lemelson entered into a settlement agreement with Data General Corporation that allows Lemelson, under certain circumstances, to reinstate certain infringement claims against Data General, but only in a Massachusetts federal court.

Two of the four contacts are clearly insufficient to satisfy the Due Process requirements. With respect to Lemelson's limited partners, even if their residencies could be deemed to constitute contacts of Lemelson, Cognex does not explain how the instant action arises out of or relates to such contacts. *See Donatelli v. National Hockey League,* 893 F.2d 459, 469 (1st Cir.1990) (contacts by members of an unincorporated association are not attributable to the association unless the association had "substantial influence" over the members' decisions to conduct activity in the forum state).

Similarly, Cognex has failed to establish any nexus between the instant case and Lemelson's settlement agreement with Data General that arose out of a dispute involving unrelated patents. *Compare* Complaint ¶ 9 with Quinn Decl., Ex. L., ¶ A.

The essential question is therefore whether the instant action can be said to arise out of or relate to Lemelson's licensing activities in the state, which include the actual licenses with Massachusetts companies and travel by Lemelson's attorneys to Massachusetts in connection with those licenses. The activities fall somewhere between the fact patterns of two previously mentioned Federal Circuit cases, *Red Wing* and *Akro,* both of which involved situations in which a patentee sent letters into a foreign forum accusing the recipients of infringement and offering them license agreements. In each case the Federal Circuit looked to the patentee's other contacts with the forum to determine whether personal jurisdiction was proper.

In *Akro,* a declaratory judgment case brought in the Northern District of Ohio, the additional contact came in the form of an exclusive license agreement between the defendant-patentee, Ken Luker ("Luker"), and an Ohio corporation which was a competitor of the plaintiff. *Akro,* 45 F.3d at 1542–1543. The Federal Circuit held that the exclusive license agreement constituted a purposeful contact with Ohio and that, because the agreement obligated Luker "to defend and pursue any infringement" of the subject patent, the plaintiff's cause of action "relate[d] to" that agreement. *Id.* at 1548–49. Crucial to the relatedness analysis was the fact that the license agreement required Luker to send the infringement notices that ultimately became the basis for the plaintiff's declaratory judgment action. In the instant case, Cognex does not allege that Lemelson has similar obligations, nor has this Court's independent review of the proffered license agreements uncovered any.

In *Red Wing,* a declaratory judgment action was brought in the District of Minnesota. The additional contacts came

in the form of several non-exclusive license agreements between the defendant-patentee, Hockerson–Halberstadt, Inc. ("HHI"), and various other companies that did business in Minnesota. *Red Wing*, 148 F.3d at 1357–58. None of the licensees was incorporated in Minnesota. The Federal Circuit held that those license agreements did not constitute a contact between HHI and Minnesota, reasoning that "doing business with a company that does business in Minnesota is not the same as doing business in Minnesota." *Id.* at 1361. The court therefore did not discuss whether the cause of action arose out of or was related to HHI's business relationships with those licensees.

In the instant case, unlike in *Red Wing,* it is clear that Lemelson's non-exclusive licensing agreements with Massachusetts companies constitute contacts with the forum. It is unclear, however, whether the present action arises out of or relates to those contacts, the issue the *Red Wing* court did not need to address. The key question is whether *Akro's* holding should be extended to the facts of the instant case.

In *Akro,* the court signaled an expansion of the "arises out of or relates to" standard, noting that the phrase is disjunctive in nature, thus indicating "added flexibility and signal[ing] a relaxation of the applicable standard from a pure 'arises out of' standard." *Akro,* 45 F.3d at 1547 (quoting *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 206 (1st Cir.1994)). However, despite the Court's indication that "relates to" should be construed broadly, in *Red Wing* the same Court was careful to limit *Akro's* holding to its facts, specifically emphasizing the exclusive nature of the license and the obligations it imposed on the patentee in that case. *Red Wing,* 45 F.3d at 1562.

This Court believes that those obligations were critical to the relatedness element of the personal jurisdiction analysis. The exclusive license in *Akro* obligated the patentee to pursue and prosecute

infringement of the patent. The infringement notices sent to Akro therefore stemmed, at least in part, from that obligation. Because those infringement notices served as the basis for Akro's complaint, the cause of action bore a nexus to the exclusive license agreement.

In the case at bar, Lemelson's licenses with Massachusetts companies do not obligate it to defend the patents or to prosecute any infringement thereof. Lemelson's decision to send infringement notices (cease and desist letters) to the Cognex Customers was therefore wholly its own. Any connection between the infringement notices and the license agreements is, at most, *de minimis.* Although Cognex's cause of action is related to the infringement notices, those notices are not clearly related to Lemelson's licensing agreements with third parties which happen to be Massachusetts residents. As such, Cognex's cause of action cannot be said to arise out of or relate to Lemelson's licenses.

In *Akro,* the obligations created by the exclusive license agreement provided the critical link between that agreement and the cause of action. That link is absent in the instant case. Without such a nexus, this Court concludes that Cognex's cause of action does not arise out of or relate to Lemelson's licensing agreements with Massachusetts companies. The case will therefore be dismissed for lack of personal jurisdiction.

## B. Other Issues

Because this Court finds that it does not have personal jurisdiction over Lemelson, it is unnecessary to address the remaining issues raised in Lemelson's motion to dismiss.

### ORDER

For the foregoing reasons, Lemelson's Motion to Re-transfer to Eastern Section (Docket No. 16) is DENIED and Lemelson's Motion to Dismiss or to Transfer

**10**

(Docket No. 15) is ALLOWED. The case is hereby dismissed.

So ordered.