ECOLOGICAL SYSTEMS
TECHNOLOGY, et
al., Plaintiffs,

v.

AQUATIC WILDLIFE CO.,
et al., Defendants.

No. CIV.A. 99–12005–JLT.

United States District Court,
D. Massachusetts.

Sept. 18, 2000.

Todd H. Prevett, Prevett & Prevett, Andover, MA, for plaintiff.

John L. DuPre', Hamilton, Brooks, Smith & Reynolds, P.C., Lexington, MA, Thomas P. O'Connell, O'Connell Law Office, Burlington, MA, Thomas J. Laabs,

U.S. Aquarium, Inc., Denver, CO, for defendants.

## MEMORANDUM

TAURO, District Judge.

Plaintiffs Ecological Systems Technology, L.P. ("EST–VA") and its subsidiary Ecological Systems Technology of Mass., Inc. ("EST–MA") (collectively "Plaintiffs") filed this patent infringement suit against Defendants Wildlife Ecosystems, L.L.C. d/b/a Aquatic Wildlife Co. ("Aquatic"), U.S. Aquarium, Inc. and John Walch. Plaintiffs dismissed Defendant Walch by stipulation on December 20, 1999, and this court entered a default judgement against Defendant Aquatic on January 18, 2000 for failure to plead or otherwise defend as provided by Fed. R.Civ.P. 55(a). U.S. Aquarium is the only remaining defendant in this case.[1] Jurisdiction arises under 28 U.S.C. §§ 1331, 1338 for Plaintiffs' federal patent infringement claim.

### I. Background:

EST–VA is a District of Columbia limited partnership with its principal place of business is Glouster, Virginia. EST–MA is a Massachusetts corporation with its principal place of business in Andover, Massachusetts. EST–VA is the legal assignee and EST–MA a sub-assignee of three patents related to underwater ecosystems for use in aquariums. U.S. Aquarium, a Colorado corporation with its principle place of business in Denver, Colorado, manufactures aquariums.

The case against U.S. Aquarium stems from Plaintiffs' allegation that, in November 1996, Aquatic contracted with U.S. Aquarium for the manufacture of ecosystems utilizing the patented technology at issue. At the time of this Aquatic–U.S. Aquarium contract, Aquatic did not possess any rights or licenses to use the technology. U.S. Aquarium maintains that it had no knowledge of any infringement and ceased manufacturing the patented aquarium system upon receipt of the Complaint in this case.

At issue today is U.S. Aquarium's motion to dismiss for lack of personal jurisdiction.

### II. Analysis:

 Defendant U.S. Aquarium moved to dismiss pursuant to Fed. R.Civ.P. 12(b), arguing, *inter alia,* the court's lack of personal jurisdiction. Generally, determining whether a district court can exercise jurisdiction over a nonresident defendant is a two-step inquiry. *See Cognex Corp. v. Lemelson Med., Educ. and Research Found.,* 67 F.Supp.2d 5, 7 (D.Mass.1999). First, the court must examine Massachusetts' long-arm statute to determine whether the statute confers personal jurisdiction over the defendant. Second, the court must determine whether exercising such jurisdiction comports with the Due Process requirements of the federal Constitution. *See id.* Because Massachusetts' long-arm statute exercises jurisdiction over the person to the full extent allowed by the U.S. Constitution, *see 'Automatic' Sprinkler Corp. of America v. Seneca Foods Corp.,* 361 Mass. 441, 280 N.E.2d 423, 424 (1972), jurisdiction is proper under the Commonwealth's long-arm statute if proper under the Due Process Clause. This court,

---

1. Without moving for leave of the court, Plaintiffs filed an Amended Complaint on June 28, 2000 naming Bermuda Triangle, Inc. as an additional Defendant. Plaintiffs learned in November 1999 that Bermuda Triangle purchased all of Defendant Aquatic's assets on September 24, 1999. As stated in the text of this Memorandum, Aquatic was defaulted on January 18, 2000.

therefore, proceeds directly to the Due Process analysis.

■ Plaintiffs argue that there is specific jurisdiction over U.S. Aquarium. Specific jurisdiction exists where a nonresident defendant purposefully establishes minimum contacts with the forum state, the suit arises out of those contacts, and jurisdiction is reasonable under the U.S. Constitution. *See 3D Systems, Inc. v. Aarotech Lab., Inc.*, 160 F.3d 1373, 1378 (Fed.Cir.1998) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

■ Federal Circuit law governs the Due Process inquiry in patent cases. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed.Cir.1995); *Cognex*, 67 F.Supp.2d at 7. Applying *Akro*, the Due Process analysis in this case involves three issues: (1) whether U.S. Aquarium purposefully directed its activities toward Massachusetts residents; (2) whether Plaintiffs suit arose out of or related to U.S. Aquarium's activities; and (3) whether the assertion of personal jurisdiction would be reasonable and fair. *See Akro*, 45 F.3d at 1545–46.

### A. U.S. Aquarium's Activities in Massachusetts:

. ■ Plaintiffs argue that U.S. Aquarium purposefully directed activities at Massachusetts residents by sending credit applications and pamphlets to Massachusetts; maintaining a web site accessible in Massachusetts; advertising in Freshwater and Marine Aquarium magazine, which is distributed in Massachusetts; and shipping infringing goods into Massachusetts. This "shipping of goods" allegation is the only one made with any specificity and, therefore, the only one this court will address.

Plaintiffs point to only one instance where U.S. Aquarium shipped goods to Massachusetts. This shipment, however, resulted from an order placed with another company, Aquatic. Neither Aquarium's corporate name nor address appear anywhere on the invoices filed with this court.[2] Furthermore, an affidavit by the President of U.S. Aquarium Steven Larsen states that U.S. Aquarium does not have offices, telephone listings, mailing addresses or bank accounts in Massachusetts, and does not advertise or employ people in Massachusetts. (Larsen Aff., p. 1). The affidavit further states that U.S. Aquarium does not make or sell such systems in Massachusetts. *Id.*

Plaintiffs argue that U.S. Aquarium's contacts with Massachusetts are "at least" the equivalent of acts which gave rise to personal jurisdiction over one of the defendants in *3D Systems*. This court disagrees.

The relevant defendant in *3D Systems* "sent promotional letters, solicited orders for models, sent videos and sample parts, and issued price quotations to residents of California[,] ... responded to e-mail requests for information, ... discussed the use of a California company's software .... [and] purchased parts ... in California." *3D Systems*, 160 F.3d at 1378. Plaintiffs in this case make no allegations beyond the vague assertion regarding pamphlets and credit applications, along with the one shipment U.S. Aquarium made on Aquatic's behalf. U.S. Aquarium's situation is clearly distinguishable from that of the defendant in *3D Systems*

2. In their pleadings, the Parties debate the significance of the fact that the sole Massachusetts customer's address was the same address as Plaintiffs' counsel. The pleadings also reveal that the customer shared a fax number with Plaintiffs' counsel. Furthermore, the invoice for the shipment in question was dated the same day as the Complaint and five days before the Complaint was filed.

over which the court found personal jurisdiction.

A closer analogy is with the second corporate defendant in *3D Systems*, Aarotech, over which the court did not find personal jurisdiction. Aarotech did not take any direct actions toward the residents of California. But, its corporate name appeared on letterhead of a subsidiary doing business there. It also maintained a web site accessible in California. *3D Systems*, 160 F.3d at 1380. Similarly, Plaintiffs state that U.S. Aquarium maintains a web site accessible in Massachusetts, but fail to allege that U.S. Aquarium took any direct actions toward the residents of Massachusetts, save for the shipment.

With respect to defendant Aarotech, the court in *3D Systems* found that, "[o]n its own, Aarotech directed no activity toward the residents of California; therefore, we need not examine the other two prongs of the *Akro* test." *Id.* Here, U.S. Aquarium was also a passive actor whose contacts with Massachusetts resulted from a business transaction between the Massachusetts customer and a third party, Aquatic.

### B. U.S. Aquarium's Activities in Relation to Plaintiffs' Claim of Patent Infringement

The second prong of the *Akro* test requires that Plaintiffs' suit arises out of or directly relates to U.S. Aquarium's activities in Massachusetts. Plaintiffs sue for patent infringement. Patent infringement occurs when a party "without authority makes, uses, offers to sell, or sells any patented invention." 35 U.S.C. § 271(a). For specific personal jurisdiction to exist over U.S. Aquarium in Massachusetts, Plaintiffs must allege that U.S. Aquarium did one of those proscribed patent infringement activities in Massachusetts. *See HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 (Fed.Cir.1999). U.S.

Aquarium does not make anything in Massachusetts. Plaintiffs do not claim that U.S. Aquarium used the patented technology in Massachusetts. For personal jurisdiction to exist, U.S. Aquarium must have offered to sell or sold the patented invention in Massachusetts.

■ Contrary to Plaintiffs' contention, U.S. Aquarium's shipment on Aquatic's behalf does not rise to the level of "an act of solicitation of business and in response to customer demands" (Pls.' Opp'n Mot., p. 8). "Offer to sell" liability under the patent infringement statute is interpreted according to its ordinary meaning in contract law, as revealed by traditional sources of authority. *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1254–55 (Fed.Cir.2000). Plaintiffs' characterization of the transaction is applicable to Aquatic, but not U.S. Aquarium. Plaintiffs did not allege facts showing that U.S. Aquarium sold or offered to sell anything to the Massachusetts customer. U.S. Aquarium's corporate name and contact information appear nowhere on the invoice for the sale of the infringing goods. Aquatic sold the goods in question and U.S. Aquarium shipped them. U.S. Aquarium acted as a fulfillment center rather than a seller.

Plaintiff again cites *3D Systems* to support a finding that U.S. Aquarium meets the second prong of the *Akro* test. The facts in *3D Systems*, however, are not analogous. 3D Systems based its patent infringement claim on defendants' "offer to sell." *See 3D Systems*, 160 F.3d at 1378. The relevant defendant there sent eight letters listing prices and describing the merchandise for sale to four different companies in California. *Id.* at 1376. The same defendant also sent order solicitations along with videos, sample parts and other promotional materials to eighteen other prospective customers in California. *Id.* U.S. Aquarium's alleged conduct was

not similar. Plaintiffs do not assert any facts indicating that U.S. Aquarium offered to sell the infringing goods to any resident of Massachusetts.

In analyzing whether a defendant's conduct amounted to an offer to sell, the Federal Circuit looked for evidence that the relevant parties discussed price, quantity and delivery dates. *See HollyAnne*, 199 F.3d at 1308–09 (holding that an offer to donate cannot be an offer to sell). Plaintiffs here do not allege any communications between U.S. Aquarium and the Massachusetts customer. There is no indicia of an offer to sell between the parties. The only activity attributable to U.S. Aquarium is delivery. As the invoices demonstrate, it was Aquatic that sold the infringing goods and not U.S. Aquarium.

Personal jurisdiction over U.S. Aquarium for Plaintiffs' patent infringement claim is not proper in Massachusetts, because U.S. Aquarium did not make, use, offer to sell, or sell the patented technology in Massachusetts. *See* 35 U.S.C. § 271(a).

### C. Other Issues:

Finding that personal jurisdiction over U.S. Aquarium is not proper, it is unnecessary to address the remaining issues raised in U.S. Aquarium's Motion to Dismiss. Because U.S. Aquarium is the only remaining Defendant, Plaintiffs' pending Motion for a Preliminary Injunction is denied as moot (see attached Order).

### III. Conclusion:

Based on the record, this court lacks personal jurisdiction over U.S. Aquarium. As stated in the attached order, Defendant U.S. Aquarium's Motion to Dismiss is ALLOWED.

IT IS SO ORDERED.

### ORDER

The court hereby orders as follows:

(1) Plaintiffs' unopposed Motion for Entry of Final Judgement [27–1] against Defendant Wildlife Ecosystems d/b/a Aquatic Wildlife Co. is ALLOWED. Judgement, therefore, is entered for the Plaintiffs against Defendant Wildlife Ecosystems d/b/a Aquatic Wildlife Co. in the amount of $381,500.00, pursuant to Plaintiff's unopposed Affidavit of Counsel filed on March 15, 2000;

(2) Defendant U.S. Aquarium's Motion to Dismiss [10–1, 11–1, 12–1] is ALLOWED pursuant to the attached Memorandum; and

(3) Plaintiffs' Motion for a Preliminary Injunction [2–1] is DENIED as moot.

IT IS SO ORDERED.