**3D SYSTEMS, INC., Plaintiff–Appellant,**

v.

**AAROTECH LABORATORIES, INC., Aaroflex, Inc. and Albert C. Young, Defendants–Appellees.**

No. 97–1514.

United States Court of Appeals, Federal Circuit.

Nov. 12, 1998.

Richard J. Codding, Loeb & Loeb LLP, Los Angeles, CA, argued, for plaintiff-appellant. With him on the brief were Stuart Lubitz and Don F. Livornese.

Charles G. Smith, Kinsella, Boesch, Fujikawa & Towle, LLP, Los Angeles, CA, argued, for defendants-appellees. With him on the brief were George T. Kliavkoff and Anna Kogan.

Before NEWMAN, BRYSON, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

## DECISION

3D Systems, Inc. (3D) appeals the decision of the United States District Court for the Central District of California dismissing its complaint against Aarotech Laboratories, Inc. (Aarotech), Aaroflex, Inc. (Aaroflex), and Albert C. Young (Young) for lack of personal jurisdiction. *See 3D Sys., Inc. v. Aarotech Lab., Inc.*, No. CV 97–0231–WDK (C.D.Cal. July 23, 1997). We affirm the district court's determination that it did not have personal jurisdiction over Aarotech and Young. However, because the district court does have personal jurisdiction over Aaroflex, we reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

3D filed this patent infringement suit against Aarotech, Aaroflex, and Young (collectively, the defendants), alleging infringement of six of its patents. 3D also alleged that the defendants had engaged in trade libel and unfair competition. 3D additionally sought a declaratory judgment that it had not committed trade libel against the defendants. Upon the defendants' motion to dismiss for lack of jurisdiction, the district court determined that 3D had not established the elements for personal jurisdiction required by the Ninth Circuit's due process test, and

dismissed the claims against all of the defendants for lack of personal jurisdiction.

3D is incorporated under the laws of California with its principal place of business in the state of California. 3D manufactures and sells stereolithography equipment, which is also known as rapid prototyping (RP) equipment, and is the largest manufacturer of such equipment in the United States. This equipment is used to produce three-dimensional prototype models of products during the design and development phase of such products. 3D holds numerous patents in the RP field.

Aarotech is incorporated under the laws of Oklahoma with its principal place of business in the state of Virginia. Aarotech has taken no actions directly in the state of California, but is identified as the parent company of Aaroflex in a number of letters and promotional materials sent by Aaroflex to California residents. Aarotech maintained a World–Wide–Web page which described certain Aaroflex products, and received e-mail messages through its World–Wide–Web gateway requesting that information on Aaroflex's products be sent to California addresses. Upon receipt, Aarotech forwarded these e-mail messages to Aaroflex.

Aaroflex, a subsidiary of Aarotech, is incorporated under the laws of West Virginia with its principal place of business in the state of Virginia. Aaroflex is also in the business of selling RP equipment, and makes a product called the Solid Imager which competes with 3D's RP equipment. Aaroflex has sold fewer than five such machines and had yet to actually deliver a completed machine as of the date of the district court's decision. Aaroflex has not sold an RP machine in California, but it has sent eight letters containing price quotations and descriptions of the merchandise for sale to four different companies in California. These letters by their terms state that they are not offers, and will not become offers, until they are executed by the recipient and returned to Aaroflex. Additionally, Aaroflex sent promotional materials, e.g., videos and sample parts, and letters to at least eighteen other prospective buyers in California. These letters provided information on RP equipment, and solicited orders for models produced by the RP machine. Generally, letters were sent either by Aaroflex's president (Young), Aaroflex's Vice–President for Marketing, Aaroflex's corporate counsel, or Aaroflex's sales representative covering the state of California. There is no evidence that any of these Aaroflex personnel actually visited the state of California in connection with their sales activity. In sum, Aaroflex provided potential California customers with price quotations, brochures, specification sheets, videos, and sample parts related to its Solid Imager product.

Aaroflex maintained a presence on the World–Wide–Web through the Aarotech website, and several Aaroflex personnel posted messages to an RP newsgroup discussing Aaroflex's technology and its history. At least five of the e-mail messages forwarded from Aarotech requested that information about Aaroflex's RP products be sent to California. Aaroflex was listed as a participant in an RP conference in California, but did not attend. Aaroflex purchased component parts for RP equipment from California companies, including lasers, computers, and laser chillers. Aaroflex also pursued discussions with a California software company for use of that company's products with Aaroflex's Solid Imager.

Young is the President and Chairman of the Board of Aaroflex, and the Chief Executive Officer of both Aarotech and Aaroflex, and resides in the Washington, D.C. area. Young sent letters on behalf of Aaroflex regarding its RP equipment to several California companies. Young also corresponded on behalf of Aaroflex with a California company regarding the use of that company's software with Aaroflex's Solid Imager.

## DISCUSSION

■ Whether or not a court has personal jurisdiction over a party is a question of law that we review de novo. See Graphic Controls Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1384, 47 USPQ2d 1622, 1624 (Fed. Cir.1998); Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc., 142 F.3d 1266, 1269, 46 USPQ2d 1616, 1619 (Fed.Cir.1998). Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction

without violating federal due process. *See Graphic Controls*, 149 F.3d at 1385, 47 USPQ2d at 1625; *Dainippon*, 142 F.3d at 1269–70, 46 USPQ2d at 1619; *Genetic Implant Sys., Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1458, 43 USPQ2d 1786, 1788 (Fed.Cir.1997). Because California's long-arm statute is coextensive with the limits of due process, *see* Cal.Civ.Proc.Code § 410.10 (West 1997); *see also Fireman's Fund Ins. Co. v. National Bank of Coops.*, 103 F.3d 888, 893 (9th Cir.1996); *Vons Cos., Inc. v. Seabest Foods, Inc.*, 14 Cal.4th 434, 444, 58 Cal.Rptr.2d 899, 926 P.2d 1085, 1091 (Cal.1996), our only inquiry is whether or not exercising personal jurisdiction over the defendants in California comports with federal due process, *see Dainippon*, 142 F.3d at 1270, 46 USPQ2d at 1619–20; *Akro Corp. v. Luker*, 45 F.3d 1541, 1544, 33 USPQ2d 1505, 1507 (Fed.Cir.1995).

▪ Our analysis must begin with the choice of law issue presented in this appeal, namely, which federal circuit court of appeals' personal jurisdiction law is properly applied in the constitutional due process analysis. The district court held, and the defendants concur, that the Ninth Circuit's federal due process analysis applied to the personal jurisdiction issue in this case. 3D argues that the issue of jurisdiction is bifurcated, namely that Ninth Circuit law should apply to personal jurisdiction for the purposes of the state law claims, and Federal Circuit law to the patent claims. We disagree with all of these positions.

▪ The Federal Circuit has exclusive jurisdiction over an appeal from a district court when that court's jurisdiction is based at least in part on a claim arising under the patent laws of the United States. *See* 28 U.S.C. §§ 1295(a), 1338(a) (1994). When claims not arising under the patent laws are also part of the case, the district court has jurisdiction over those claims which "are so

related to claims in the action within such original jurisdiction that they form part of the same case or controversy ...." 28 U.S.C. § 1367 (1994). 3D brought an action for patent infringement based on federal law and trade libel and unfair competition claims based on state law. In this case, 3D's trade libel and unfair competition claims go hand-in-hand with its patent infringement claims. All of the claims arise out of Aaroflex's sales activity for RP equipment in California, and therefore these claims were properly brought in the district court under the supplemental jurisdiction provision of 28 U.S.C. § 1367.[1] In addition, 3D's declaratory judgment action against the defendants also arises out of related facts, because the resolution of the patent infringement issue will be a significant factor in determining whether or not 3D libeled the defendants.[2]

▪ The district court erred by applying Ninth Circuit law in its federal due process analysis when it determined that personal jurisdiction over the defendants was improper. While we defer to the interpretation of a state's long-arm statute given by that state's highest court, particularly whether or not the statute is intended to reach the limit of federal due process, *see Graphic Controls*, 149 F.3d at 1386, 47 USPQ2d at 1625, when analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law, rather than regional circuit law, applies, *see Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564–65, 30 USPQ2d 1001, 1006 (Fed.Cir.1994); *see also Akro*, 45 F.3d at 1543, 33 USPQ2d at 1506 (declaratory judgment action). The district court improperly applied Ninth Circuit law in the federal due process analysis, contrary to clear Federal Circuit precedent. Because of supplemental jurisdiction under 28 U.S.C. § 1367, as described above, the

---

1. *See* 28 U.S.C. § 1338(b) (1994) ("The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trade-mark laws."); *see also Mars Inc. v. Kabushiki–Kaisha Nippon Conlux*, 24 F.3d 1368, 1372, 30 USPQ2d 1621, 1623 (Fed.Cir.1994) (28 U.S.C. § 1338(b) permits joinder of a state unfair competition claim with a federal patent infringement claim to avoid "piecemeal litigation").

2. Regarding 3D's state law trade libel claim, we note that federal jurisdiction would also be proper pursuant to 28 U.S.C. § 1338(a) as "arising under any Act of Congress relating to patents" in that whether 3D libeled the defendants by accusing them of infringing 3D's patents necessarily depends on resolution of a substantial question of federal patent law. *See also Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1328–29, 47 USPQ2d 1769, 1776 (Fed.Cir.1998).

propriety of jurisdiction in light of federal due process for both the state law claims and the federal patent law claims is to be analyzed using Federal Circuit law.

■ In this case, 3D argues that specific jurisdiction exists over the defendants in California.[3] Specific jurisdiction exists when a non-resident defendant purposefully establishes minimum contacts with the forum state, the cause of action arises out of those contacts, and jurisdiction is constitutionally reasonable. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In *Akro*, we outlined a three-prong minimum contacts test for determining if specific jurisdiction existed: (1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair. *See Akro*, 45 F.3d at 1545–46, 33 USPQ2d at 1508–09. We have followed this test consistently in this Circuit and are bound to follow it here. *See, e.g., Dainippon*, 142 F.3d at 1270 n. 2, 46 USPQ2d at 1620 n. 2; *Genetic Implant*, 123 F.3d at 1458, 43 USPQ2d at 1789. We must determine if any of the defendants satisfies the three-prong test from *Akro*.

■ With respect to Aaroflex, we must first address whether its activities satisfy the first prong of the *Akro* test, *i.e.*, whether Aaroflex purposefully directed its activities at residents of California. Aaroflex sent promotional letters, solicited orders for models, sent videos and sample parts, and issued price quotations to residents of California. Aaroflex also responded to e-mail requests for information, and discussed the use of a California company's software with its own RP equipment. Aaroflex further purchased parts for its RP equipment in California. Aaroflex's actions were clearly purposefully directed at the state of California, and therefore satisfy the requirements of the first prong of the *Akro* test.

The second prong of the *Akro* test is whether the cause of action arises out of or directly relates to those activities. 3D is suing Aaroflex for, among other things, patent infringement. Patent infringement occurs when someone "without authority makes, uses, offers to sell or sells any patented invention." 35 U.S.C. § 271(a) (1994). Aaroflex asserts that it has never sold any RP equipment, much less made a sale, in California. However, patent infringement results from an offer to sell as well as the sale itself. It is on this basis that 3D asserts its patent infringement claim.

This case presents an issue of first impression, as the phrase "offer to sell" was recently added to § 271(a) to conform United States law to the April 1994 Uruguay Round's Trade–Related Aspects of Intellectual Property (TRIPS) agreement. *See* Uruguay Round Agreements Act, Pub.L. No. 103–465, § 533(a)(1), 108 Stat. 4809, 4988 (1994). Additionally, a new subsection, § 271(i), was added defining an "offer for sale" or an "offer to sell" as "that in which the sale will occur before the expiration of the term of the patent." *See id.* § 533(a)(5); *see also* 5 Donald S. Chisum, *Chisum on Patents* § 16.02[5][g], at 16–59 (1998) (*"Chisum"*). The amendment to § 271(a) represents a distinct change to the bases for patent infringement, because liability arose previously only as the result of an actual sale. *See, e.g., Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1523, 25 USPQ2d 1196, 1198 (Fed.Cir.1992) ("The language of [section] 271(a) clearly specifies only the making, using or selling of a patented invention as infringing activities."). Little interpretation of this change as it relates to direct infringement under § 271(a) has been given, and no guidance on whether state law applies when determining if an "offer to sell" has occurred.

■ The defendants argue that California state law should apply to determine whether or not the letters sent by Aaroflex should be considered "offer[s] to sell." The price quo-

---

**3.** The district court held that general jurisdiction over the defendants did not exist in California because none of the defendants had sufficient contacts with California that rose to the level of being "systematic" and "substantial." *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445, 447–49, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Because none of the parties challenge this on appeal, we do not further address general jurisdiction.

tations sent by Aaroflex to various California companies declare explicitly on their face that they are not offers, and Aaroflex alleges that they are mere solicitations for offers from California companies. Based on the quoted price, a California company would then offer to buy RP equipment from Aaroflex, who could then accept or decline that "offer." Based on California state law, argues Aaroflex, these letters could not be acts of infringement, and therefore cannot form the basis for jurisdiction.

 We have rejected previous attempts to shape our personal jurisdiction law through state common law definitions of federal statutory terms as defendants suggest. *See North Am. Philips Corp. v. American Vending Sales, Inc.,* 35 F.3d 1576, 1578–79, 32 USPQ2d 1203, 1204–05 (Fed.Cir.1994). In *North American Philips,* we stated that "while it may be appropriate to speak loosely of patent infringement as a tort, more accurately the cause of action for patent infringement is created and defined by statute." *Id.* at 1579, 32 USPQ2d at 1205. Defining the contours of the tort of infringement, which exists solely by virtue of federal statute, entails the construction of the federal statute and not a state's common or statutory law. *See id.* Applying this reasoning to the present case, the tort of patent infringement due to an "offer to sell" is a federal statutory creation which is not limited by California contract law. The statutory character of the "offer to sell" requires us to "look back to federal law on the conceptualization" of the "offer to sell" itself.[4] *Id.*

 The price quotation letters sent by Aaroflex to California residents state on their face that they are purportedly not of-fers, but to treat them as anything other than offers to sell would be to exalt form over substance. We have consistently held that such exaltation is not appropriate in the due process analysis. *See Akro,* 45 F.3d at 1546, 33 USPQ2d at 1509; *North American Philips,* 35 F.3d at 1579, 32 USPQ2d at 1205 (citing *Burger King,* 471 U.S. at 478–79, 105 S.Ct. 2174). If we were to permit potential infringers to avoid jurisdiction by denominating what otherwise would be an offer to sell merely by asserting the contrary in the offer, the prohibition added to § 271(a) against offers to sell would be hollow indeed. One of the purposes of adding "offer[ ] to sell" to § 271(a) was to prevent exactly the type of activity Aaroflex has engaged in, *i.e.,* generating interest in a potential infringing product to the commercial detriment of the rightful patentee. As a matter of federal statutory construction, the price quotation letters can be regarded as "offer[s] to sell" under § 271 based on the substance conveyed in the letters, *i.e.,* a description of the allegedly infringing merchandise and the price at which it can be purchased. Moreover, such a construction harmonizes with the broad definition of "offer to sell" provided in § 271(i). We hold that 3D's claim for patent infringement arises out of or relates to Aaroflex's actions of sending price quotation letters to California residents. The second prong of the *Akro* test, therefore, is met.

 The third prong of the *Akro* test is whether the assertion of personal jurisdiction is reasonable and fair. This prong embodies the due process considerations of personal jurisdiction and places the burden on the

---

4. 3D argues that we should apply the "on-sale bar" analysis from 35 U.S.C. § 102(b) to the facts of this case. *See Chisum* § 16.02[5][g], at 16–59 n. 33 (suggesting that, in interpreting an offer to sell under § 271(a), a court could look to decisional authority under § 102(b)). Section 271(a) contains similar language to that found in § 102(b), which denies patent protection to any invention "on sale" more than one year before the patent application was filed. *See* 35 U.S.C. § 102(b) (1994).

We decline to import the authority construing the "on sale" bar of § 102(b) into the "offer to sell" provision of § 271(a). The policy reasons underlying the on-sale prohibition of § 102(b) include the concern that patentees will commer-cialize their inventions while deferring the beginning of the statutory patent term, encouraging prompt and widespread disclosure of inventions to the public, discouraging the removal of inventions from the public domain when the public has come to rely on their ready availability, and giving investors a reasonable period to discern the potential value of an invention. *See Ferag AG v. Quipp Inc.,* 45 F.3d 1562, 1566, 33 USPQ2d 1512, 1515 (Fed.Cir.1995). These policy reasons have no resonance with § 271(a)'s statement of the rights of the patentee to exclude others from making, using, offering to sell, or selling the patented invention. Thus, "offer to sell" under § 271 cannot be treated as equivalent to "on sale" under § 102(b).

party over whom jurisdiction is sought to prove that jurisdiction would be constitutionally unreasonable. *See Akro,* 45 F.3d at 1545–46, 33 USPQ2d at 1511 (" '[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.' " (quoting *Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174)). The defendants do argue that jurisdiction over Aarotech and Young would be unreasonable, but present no argument that jurisdiction over Aaroflex would be constitutionally unreasonable.

Additionally, none of the examples of constitutional unreasonableness listed in *Burger King* is present here. A clash between the fundamental social policies of a forum state and another state related to the action could constitutionally trump jurisdiction. *See Burger King,* 471 U.S. at 477–78, 105 S.Ct. 2174. No such clash exists here. Regardless of the forum, Federal Circuit patent law will be applied to the patent claims. Although California law on trade libel and unfair competition may differ from other states, Aaroflex has presented no arguments that there is conflict between the fundamental social policies underlying California's trade libel and unfair competition laws and the laws of other potential forums.

Another example of constitutional unreasonableness given in *Burger King* is an inconvenient forum for the challenging party. *See id.* It is difficult to conclude that California is an inconvenient forum for Aaroflex in which to defend itself, when it is a convenient forum for Aaroflex to buy parts and shop for software for its RP equipment, when Aaroflex considered participating in a trade show there, and when Aaroflex clearly wants to sell RP equipment there. We find that the third prong of the *Akro* test is satisfied, and that personal jurisdiction over Aaroflex is constitutionally reasonable. Because all three prongs of the *Akro* test have been met, we hold that Aaroflex is subject to personal jurisdiction in California.

 Next, with respect to Aarotech, we first address whether its activities satisfy the first prong of the *Akro* test, *i.e.,* whether Aarotech purposefully directed its activities at residents of California. Aarotech did not take any direct actions toward the residents of California, except that its name appeared, in a different spelling (Aarotec), on the letterhead used by Aaroflex to correspond with certain California residents. Although Aarotech maintained a World–Wide–Web site viewable in California, any e-mail responses to that site were forwarded to Aaroflex. *See Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 419–20 (9th Cir.1997) ("essentially passive" web site was insufficient to establish purposeful availment for purposes of due process). On its own, Aarotech directed no activity toward the residents of California; therefore, we need not examine the other two prongs of the *Akro* test. Personal jurisdiction over Aarotech for the claims at issue is not proper in California because Aarotech did not purposefully direct any activities at California residents.

 Finally, we apply the *Akro* test to Young, the president and CEO of Aaroflex. First, we examine if Young has purposefully directed his activities toward the residents of the state of California. We conclude that he has not. All of Young's actions in relation to the state of California were taken in his role as an officer of Aaroflex. Young did not direct any activities individually toward California.

However, 3D asserts that we should pierce the corporate veil for both Young and Aarotech, or treat these entities as alter egos, and impute Aaroflex's activities to Young and Aarotech. 3D has not presented us with any controlling precedent which compels us to pierce the corporate veil, or to conclude that the defendants are alter egos. Moreover, 3D has not presented us with any choice of law arguments as to which state's law should be applied in this case.

We have stated that the corporate form is not to be lightly cast aside. *See Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 552, 16 USPQ2d 1587, 1593 (Fed. Cir.1990) (in deciding whether to pierce the corporate veil, "[t]he court, however, must 'start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception' ... [or] unless there is at least 'specific intent to escape liability for a specific tort ....' " (quoting *Zubik v. Zubik,* 384

F.2d 267, 271–73 (3d Cir.1967))) (internal citations omitted). Because 3D has failed to show that the corporate form should be ignored in this instance, we decline to do so. Therefore, Young and Aarotech are not subject to personal jurisdiction in California.

## CONCLUSION

For the reasons stated above, we reverse the district court's holding that personal jurisdiction over Aaroflex in California was not proper and remand for further proceedings, but affirm the district court's holding that personal jurisdiction over Aarotech and Young was not proper. The decision of the district court is affirmed-in-part and reversed-in-part, and the case is remanded for further proceedings consistent with this opinion.

*AFFIRMED–IN–PART, REVERSED–IN–PART* and *REMANDED*.