**HOLLYANNE CORPORATION,
Plaintiff–Appellant,**

v.

**TFT, INC., Defendant–Appellee.**

No. 99–1229.

United States Court of Appeals, Federal Circuit.

Dec. 15, 1999.

Dennis L. Thomte, Zarley, McKee, Thomte, Voorhees & Sease, of Omaha, Nebraska, argued for plaintiff-appellant.

Bruce D. Vosburg, Fitzgerald, Schorr, Barmettler & Brennan, P.C., of Omaha, Nebraska, argued for defendant-appellee.

Before MICHEL, Circuit Judge, SKELTON, Senior Circuit Judge, and SCHALL, Circuit Judge.

MICHEL, Circuit Judge.

HollyAnne Corporation ("HollyAnne") appeals from the January 6, 1999 order of the United States District Court for the District of Nebraska, granting defendant TFT, Inc.'s ("TFT") motion to dismiss for lack of personal jurisdiction and improper venue and ordering the transfer of the case to the United States District Court for the Northern District of California. This appeal was submitted for our decision following oral argument on November 10, 1999. Because we hold that the district court properly dismissed for lack of personal jurisdiction but improperly transferred the case under 28 U.S.C. § 1404(a), we affirm the portion of the order dismissing the case but vacate the portion transferring the case.

## BACKGROUND

HollyAnne, a Nebraska corporation, filed a patent infringement suit against TFT, a California corporation, in the United States District Court for the District of Nebraska on July 29, 1998. TFT filed a motion to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, to transfer venue to the United States District Court for the Northern District of California. On January 6, 1999, the district court issued an order granting the motion to dismiss for lack of personal jurisdiction and improper venue *and* directing the clerk to transfer the case to the Northern District of California. HollyAnne filed a timely appeal with this court on January 28, 1999.

HollyAnne is the owner of United States Patent No. 4,575,750 for a "COMMUNICATIONS APPARATUS FOR USE WITH CABLE TELEVISION SYSTEMS" and United States Patent No. 5,548,323 for a "MULTIPLE INPUT PROCESSOR FOR CABLE TELEVISION HEAD END CONTROLLER." HollyAnne's original complaint alleged that TFT infringed those patents by making, having made, using, offering for sale or selling devices embodying those patented inventions. TFT sells products known as the "911 cable encoder/decoder" and the "cable home alert device." In its brief to this court, HollyAnne asserts that both of these products infringe its patents.

The trial court found that TFT was not qualified to do business in Nebraska, had no registered agent in the state, had no employees, bank accounts, offices, or real estate interests in the state, and had not sold the infringing products in the state. The court did find, however, the TFT had one independent sales representative in Nebraska, who also represented other companies, and that its officers had made one presentation of the allegedly infringing products in Nebraska. According to the district court's findings, however, neither the activities of the representative nor the presentation resulted in sales of the infringing products in Nebraska. These findings are not disputed by the parties.

Relying on a five-factor test articulated by the United States Court of Appeals for

the Eighth Circuit in *Wessels, Arnold & Henderson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir.1995), and the application of those factors by district courts in similar patent cases, the district court determined that it did not have personal jurisdiction over TFT. The court found that it did not have general jurisdiction because TFT's "contacts with Nebraska are not 'continuous or systematic.'" The court further reasoned that it did not have specific jurisdiction because "the infringement litigation does not come about solely because of the Defendant's contacts with Nebraska." In addition, referencing 28 U.S.C. § 1404(a), the district court judge determined that California would be a more convenient forum for the case and transferred it to the United States District Court for the Northern District of California.

HollyAnne challenges the dismissal of the case for lack of personal jurisdiction and improper venue. In addition, HollyAnne asserts that the transfer of venue to the United States District Court for the Northern District of California was void because the district court did not have the power to both dismiss and transfer a case. TFT argues that a decision by this court on personal jurisdiction "is moot, since in either case the transfer will take effect."

Because this was a civil action arising under an act of Congress relating to patents, the district court had subject matter jurisdiction under 28 U.S.C. § 1338(a). This court's jurisdiction is based on 28 U.S.C. § 1295(a)(1).

### DISCUSSION

HollyAnne argues that the district court should have applied the three-prong minimum contacts test articulated by this court in *Akro Corp. v. Luker*, 45 F.3d 1541, 1545–46, 33 USPQ2d 1505, 1508–09 (Fed. Cir.1995), rather than the five-prong Eighth Circuit test spelled out in *Wessels, Arnold & Henderson*, 65 F.3d at 1432. TFT does not dispute that Federal Circuit precedent controls personal jurisdiction

determinations for patent cases in federal district court. TFT asserts, however, that even under *Akro* the federal district court in Nebraska did not have personal jurisdiction.

TFT also argues that the personal jurisdiction question is not properly appealed to this court because the district court, "at the same time and in the alternative [to its order dismissing the suit for lack of jurisdiction] ordered the transfer of the case to the United States District Court for the Northern District of California." Because a holding that the transfer of venue was proper would render a decision by this court on personal jurisdiction moot, we address the transfer question first.

### I. Transfer of Venue

■ The district court determined that, in patent cases, venue and personal jurisdiction involve the same analysis and do not need to be considered separately. It also determined that in this case there was no personal jurisdiction, and presumably, therefore, that venue was improper. Referencing 28 U.S.C. § 1404(a), the trial judge found (1) that the facts giving rise to the patent infringement case occurred in another state; (2) the defendant's documents were located in another state; and (3) the convenience of the witnesses weighed in TFT's favor. Thus, it transferred the case to the Northern District of California.

TFT argues that the district court had the power to transfer the case despite its finding of no personal jurisdiction. HollyAnne counters that the district court does not have the power to transfer a case once the district court has dismissed it for lack of personal jurisdiction. HollyAnne argues that 28 U.S.C. § 1406(a) allows the court in which venue is not proper to *either* dismiss *or* transfer a case, not both. TFT asserts that the court is not prevented from deciding to dismiss and transfer.

■ A district court can transfer venue under either 28 U.S.C. § 1404(a) or 28 U.S.C § 1406(a). Section 1404(a) allows a court where venue is proper to transfer a case to a more convenient forum. Section 1406(a) allows a court to either dismiss or transfer a case when venue is improper. *See Martin v. Stokes*, 623 F.2d 469, 471 (6th Cir.1980).[1] In this case the district court determined that venue was improper because personal jurisdiction did not lie; thus the case was dismissed. Then the district court determined, apparently in the alternative, that the Northern District of California was a more convenient forum and ordered the case transferred pursuant to section 1404(a). Even if the court intended to transfer the action under section 1406(a), that action is not proper when combined with a dismissal. Accordingly, we hold that once it had decided that it lacked personal jurisdiction and had dismissed the complaint, the district court could not properly transfer the case to the Northern District of California.[2]

Because the transfer was improper as unauthorized under section 1404(a) and contrary to section 1406(a), we vacate the order transferring the case to the Northern District of California.

## II. Personal Jurisdiction

■ Whether or not a court has personal jurisdiction over a party is a question of law that this court reviews *de novo*. *See 3D Sys. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376, 48 U.S.P.Q.2d 1773, 1775 (Fed. Cir.1998). Personal jurisdiction over an out-of-state defendant is proper if the forum state's long-arm statute permits the assertion of jurisdiction. *See id.* In interpreting a long-arm statute this court defers to the forum state's highest court. *Id.* at 1377, 48 U.S.P.Q.2d at 1775. Nebraska's Supreme Court has interpreted its state's long-arm statute as coextensive with the limits of due process. *See Crystal Clear Optical, Inc. v. Silver*, 247 Neb. 981, 531 N.W.2d 535, 539 (1995). Thus, the district court properly defined the question before it as whether the assertion of personal jurisdiction over TFT was a violation of due process under the Constitution of the United States.

The parties agree that Federal Circuit precedent, not the personal jurisdiction law of the Eighth Circuit as applied by the district court, controls in this case. In addition, HollyAnne does not dispute the district court's finding that it did not have general jurisdiction over TFT. Thus the question before this court is whether specific jurisdiction over TFT in Nebraska was established according to the Federal Circuit test.

■ In *Akro* this court outlined a three-prong test for determining if specific jurisdiction exists: (1) whether the defendant purposefully directed its activities at the residents of the forum; (2) whether the claim arises out of or is related to those activities, and (3) whether assertion of per-

1. There is some confusion as to whether a section 1404(a) transfer is proper when the transferring court does not have personal jurisdiction over the defendant. *See, e.g., Martin*, 623 F.2d at 473–74 (discussing a split in the circuits over what is the proper transfer action for a district court where there is no personal jurisdiction but venue is proper). Here venue and personal jurisdiction are coextensive, so the court was not in the position of being the proper venue but not having personal jurisdiction.

2. We question, but do not decide, whether even if the district court had jurisdiction and therefore the authority to transfer under section 1404(a), it properly weighed the convenience of the parties in determining that the case should be transferred. A transfer of venue for the convenience of the parties normally requires that the court give great weight to the plaintiff's choice of forum and then weigh the convenience of both parties. The opinion below, however, appears only to consider the convenience of the defendant. In addition, the witnesses to be called by the defendant are all its employees; thus their location is not as important a factor as it would be if they were not under the defendant's control and it would be forced to subpoena those witnesses and therefore require the court to have jurisdiction over them.

sonal jurisdiction is reasonable and fair. 45 F.3d at 1545–46, 33 U.S.P.Q.2d at 1508–09; *see also 3D Sys.*, 160 F.3d at 1379, 48 U.S.P.Q.2d at 1776.

■ HollyAnne argues that the first prong of the *Akro* test is met because this court found in *3D Systems* that the sending of promotional letters, solicitation of orders and issuing of price quotations to residents of the forum were sufficient to satisfy this first prong. However, HollyAnne does not cite any efforts by TFT to quote prices, solicit orders or send promotional sales letters to residents of Nebraska. In fact, at oral argument, HollyAnne conceded that the only specific evidence it had of any activity in Nebraska was a newspaper article describing TFT's offer, at a private meeting with school officials, to *donate* the allegedly infringing devices to a school system and a local cable television station in North Platte, Nebraska.[3] Ultimately, no donation was made. TFT, however, does not challenge the assertion that the presentation to the school system officials satisfies the "directing activities to residents of the forum" prong of the test.

■ The second prong of the *Akro* test requires that the cause of action arise out of or directly relate to the defendant's activities in the forum state. HollyAnne's cause of action is the alleged infringement of its patents. Patent infringement occurs when a party "without authority makes, uses, offers to sell or sells any patented invention." 35 U.S.C. 271(a) (1994). Thus, for there to be specific personal

jurisdiction over TFT in Nebraska, HollyAnne would have to allege that TFT did one of those listed activities in Nebraska.[4]

HollyAnne argues that TFT's presentation in Nebraska of, and offer to donate to persons in Nebraska, the allegedly infringing products, if proven, constitutes infringement. TFT responds that no "sale" or "offer to sell" the devices was made in Nebraska, only an offer to *donate*. At oral argument HollyAnne conceded that it was unaware of any actual sales or sales offers in Nebraska and thus hinged its assertion of personal jurisdiction solely on TFT's offer to donate the devices. Accordingly, this court must now decide whether an offer to donate is the legal equivalent of an "offer to sell" for purposes of patent infringement under section 271(a) of the Patent Act. We hold that it is not.

The question of whether an offer to donate is the equivalent of an offer to sell is one of first impression for this court. Congress added the phrase "offer to sell" to section 271(a) as part of the implementing legislation for the 1994 Uruguay Round Agreements Act, Pub.L. No. 103–465, § 533(a)(1), 108 Stat. 4809, 4988 (1994). In its first attempt to define the contours of an "offer to sell," this court held that there had been an "offer to sell" where the defendant manufacturer had communicated to prospective buyers both a description of the product and "a price at which it can be purchased." *3D Sys.*, 160 F.3d at 1379, 48 U.S.P.Q.2d at 1777.

In this case, HollyAnne has presented no evidence that TFT communicated a

3. One allegedly infringing device is an alert box that attaches to the cable television cable and allows warning messages for natural disasters and such to be broadcast even if the television is not on.

4. The district court found that the cause of action did not arise out of the activities in the forum state because "the infringement is *also* occurring in states other than Nebraska. Therefore the litigation can not be said to stem from the Defendant's contacts with this forum even though the Defendant's actions may be furthering the alleged infringement."

(emphasis added) This "but for" test is incorrect. Such reasoning would allow *defendants* with allegedly infringing activities in multiple states to argue that personal jurisdiction did not lie in any state because the activities in the plaintiff's chosen forum were not necessary to the cause of action. The proper test for "giving rise" to a cause of action is not whether the activity in the forum state was the exclusive ground of the plaintiff's complaint against the defendant. Rather, the test is whether the activity in the forum state is *a* basis for the cause of action.

price to the school or the cable station officials or that they were prospective customers. Neither price, nor quantity, nor delivery dates were discussed during the presentation or at a later time. Indeed, nothing in the record indicates that the school system was a potential customer of TFT or that TFT solicited a purchase from the school system or intended to do so in the future. The meeting was not even sought by the school officials and the visit with the cable station official was apparently impromptu. Assessing the only evidence submitted and relied on by HollyAnne, a newspaper article describing the offered donation, it is even clearer that a purchase by the school system was not anticipated or sought by TFT. According to the article, an offer was made to donate devices to *all* the schools in the community.[5] An offer to donate products to meet all of a consumer's needs is not consistent with the gift of one device to elicit purchases of the same device by the recipient of the gift. In addition, no evidence was produced that TFT had made, much less begun to implement, plans to solicit purchases from entities in Nebraska. There was no advertising of the products in Nebraska and, as mentioned above, the meeting with the school officials was not open to the public.[6] Indeed, HollyAnne conceded that it was attempting to base personal jurisdiction on one offer to donate and nothing more.

We hold that a mere offer to donate, where a donation is never made, cannot be an offer for sale. In this case we are not faced with facts that might indicate that the presentation was actually an implied offer for sale, such as a discussion of prices, distribution of order forms for additional devices, or a gift offered as a trial or test in anticipation of a purchase. In fact, HollyAnne offered no evidence that would allow the district court to infer that the proffered donation was accompanied by communications that might someday actually escalate into an "offer to sell." There was, to be sure, an affidavit of a HollyAnne employee but it contains nothing but entirely conclusory declarations that sale activities occurred in Nebraska. For example, the affidavit recites, without support, that TFT has "sold products in Nebraska that allegedly infringe" and "[o]n information and belief, TFT has distributed products in Nebraska that allegedly infringe." At oral argument, however, HollyAnne admitted that it had no evidence to support these broad statements and had not even attempted to find such evidence. Rather, HollyAnne said it was relying solely on the newspaper article.

Since there is absolutely no evidence that TFT made anything more than a mere offer to donate the devices, it is neither necessary nor appropriate for us to define the minimum requirements of an offer to sell involving a donation.[7] It is sufficient to say that to be an offer to sell

---

5. *See* Craig Jones, *Emergency Alert System Offered Locally, The North Platte Telegraph,* Sept. 19, 1998, p. 5

6. While it might be argued that the donation, if made, would have provided TFT with significant dissemination of the virtues of its product, the facts of this case are that the donation was never made. We do not decide here whether or under what circumstances actual advertisements of a product are sufficient to be considered an "offer to sell." A mere plan to advertise in the future, which is all that might be inferred from TFT's proven activities, is certainly not by itself an offer to sell.

7. We do not address, because it was not presented, whether numerous offers to donate, or an offer to donate plus some encouragement

to buy (short of an offer to sell) might be considered an offer to sell, thus giving rise to specific jurisdiction. Arguably, even numerous offers to donate could not be considered an infringing act under section 271(a) because Congress made offers to sell infringing acts and not offers to donate, despite the obvious commercial uses of a donation. In addition, we do not reach the question of whether an actual donation could constitute an offer to sell. Nevertheless, we note that if such implied offers to sell were contemplated by Congress as infringing acts, Congress could have chosen indicia of commercialization rather than the more specific offer to sell.

for purposes of section 271(a) the alleged offer must include more than a mere invitation to accept a gift. If, as in this case, the offer included none of the hallmarks of a potential commercial transaction (i.e., a quotation of a price and a product description, or a communication that the item was available for purchase by the intended donee), it cannot be considered an offer to sell.

Because we hold that this offer to donate could not be deemed an offer to sell, we must also hold that, under *Akro*, it could not "give rise" to a cause of action under section 271(a). Accordingly, the offer to donate does not satisfy the second prong of the *Akro* test. Thus, we hold that the Nebraska district court was correct in holding that it did not have specific jurisdiction over TFT and therefore correctly dismissed the case for lack of personal jurisdiction.

## CONCLUSION

Because we hold that the transfer was improper but that the dismissal for lack of personal jurisdiction was correct, the decision of the district court is

*AFFIRMED IN–PART* and *VACATED–IN–PART*.

## COSTS

Each party to bear its own costs.