FIGI GRAPHICS, INC., Plaintiff,

v.

DOLLAR GENERAL CORPORATION, Defendant.

No. 98–CV–1435–J (RBB).

United States District Court, S.D. California.

Dec. 9, 1998.

1264

Peter J. Schulz, Greco and Traficante, San Diego, CA, for Figi Graphics, Incorporated, a Nevada corporation, plaintiff.

Roderick Manley Thompson, Pillsbury Madison and Sutro, San Francisco, CA, for Dollar General Corporation, a Kentucky corporation, defendant.

## ORDER GRANTING DEFENDANT'S *MOTION TO DISMISS* FOR LACK OF PERSONAL JURISDICTION

JONES, District Judge.

This matter comes before the Court on Defendant's motion to dismiss for lack of personal jurisdiction. Defendant argues that Plaintiff's copyright infringement action should be dismissed because Defendant does not have the requisite "minimum contacts" with the State of California to allow the Court to exercise personal jurisdiction. For the reasons set forth below, Defendant's motion to dismiss is GRANTED.

### I. Background

Defendant Dollar General Corporation [1] ("Dollar") is a Tennessee corporation with its principal place of business in Nashville. Dollar's subsidiaries own and operate a chain of value-priced retail stores under the name of Dollar General in the midwestern and southeastern United States.

Plaintiff Figi Graphics, Inc. ("Figi") is a San Diego based company that creates distinctive artwork for placement on giftware such as picture frames or candle holders. Figi recently discovered that Dollar was selling low-priced gifts with artwork identical to the designs Figi created and copyrighted. Consequently, Figi filed suit seeking damages and injunctive relief for copyright infringement.

In response, Dollar filed a motion to dismiss for lack of personal jurisdiction. Dollar argues that Figi's suit should be dismissed because Dollar does not have sufficient "minimum contacts" with the State of California to enable the Court to exercise personal jurisdiction over it. The Court agrees.

### II. Discussion

█ In a case such as this one where there is no applicable federal statute governing personal jurisdiction, a district court must apply the law of the state in which the district court sits. *See Core–Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1485 (9th Cir.1993). In California, the long-arm statute permits a court to exercise personal jurisdiction over a nonresident defendant to the full extent permitted by the Due Process Clause of the United States Constitution. *See* Cal.Code Civ.Proc. § 410.10. In order to satisfy due process requirements, a nonresident defendant must have "minimum contacts" with the forum state such that the maintenance of the suit "does not offend the traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The nature and quality of the defendant's contacts with the forum state determine whether the court has "general" or "specific" jurisdiction. The Court will discuss each in turn.

### A. General Jurisdiction

█ General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are "substantial" or "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In determining whether a defendant corporation has "continuous and systemic" business contacts with the forum state, the court should look to whether the company (1) maintains an office in the forum state, (2) has employees in the forum state, (3) uses bank accounts in the forum state, or (4) markets or sells products in the forum states. *See Id.,* at 415, 104 S.Ct. 1868 (citing *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952)). While this is not an exhaustive list, it provides guidance as to the type of contacts the corporation must have to justify exercising general jurisdiction over an out-of-state corporation.

█ In this case, none of these factors are present. Dollar is not incorporated in California; it does not maintain an office in California; it does not conduct any significant

---

1. Dollar General Corporation is the parent company of Dolgencorp, Inc., a Kentucky corporation with its principal place of business in Kentucky. Dolgencorp operates the retail stores that sold the goods at issue in this case. For purposes of this order, "Dollar" refers to Dollar General Corporation, its subsidiary Dolgencorp, Inc., and all other entities involved in operating the Dollar General stores.

corporate activity in California; it does not have any employees in California; it does not maintain bank accounts in California; and it does not make an effort to market or sell its products in California. Accordingly, the Court finds that Dollar's contacts with California are not "substantial" enough for this Court to exercise general jurisdiction.

### B. Specific Jurisdiction

Even if a nonresident defendant's contacts with the forum state are not "substantial, continuous, and systemic," the court may still have "specific" or "limited" jurisdiction over the defendant. Specific jurisdiction exists where the following three criteria are met:

(1) The defendant must have "purposefully availed" himself of the privilege of conducting activities in California, thereby invoking the benefits and protections of its laws;

(2) the claim must "arise out of" the defendant's California-related activity; and

(3) the exercise of jurisdiction must be "reasonable."

*Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir.1995).

### 1. Purposeful Availment

■ The purposeful availment requirement ensures that a nonresident defendant will not be haled into court based upon "random, fortuitous or attenuated" contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). This requirement is satisfied if the defendant "has taken deliberate action" toward the forum state. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.1995). The defendant does not have to be physically present or have physical contacts with the forum, so long as his efforts are "purposefully directed" toward forum residents. *Id.* Figi argues that Dollar "purposefully directed" its business toward California by (1) selling goods to a customer in California on *one* occasion, and (2) using a California corporation to import goods from China.

■ With regard to the sale, Figi argues that by "consummating a business transaction" in California, Dollar "purposefully availed" itself to the privileges of doing business in California. (*See* Pl's Mem. at 13). However, the one California sale that Figi refers to in its papers was apparently made to a private investigator hired by Figi. (*See* Def's Reply Mem. at 2–3). The private investigator contacted a Dollar employee and told him that he and his wife had recently purchased picture frames at a Dollar store in the southeastern United States and could not find similar ones in California. (*See Id.*). In the interest of helping a supposed customer, Dollar's customer service department made special arrangements to ship some picture frames to California. (*See Id.*).

This isolated incident is simply too "random" and "attenuated" to support a finding that Dollar has "purposefully directed" its business activities toward California residents. Beside this one "staged" sale, Dollar has never attempted to promote or sell its products in California. Instead, all of Dollar's sales occur at its stores in the midwestern and southeastern United States. Based on these facts, the Court finds that Dollar has not "purposefully availed" itself of the benefits of doing business in California.

Figi also attempts to satisfy the "purposeful availment" requirement by citing Dollar's use of a California corporation, Galactic Enterprises, to import goods from China. Figi finds it significant that Galactic is listed as Dollar's "agent" on one of Dollar's import order forms. Figi argues that as Dollar's agent, Galactic's actions should be imputed to Dollar for purposes of determining personal jurisdiction. The Court, however, is not convinced that an agency relationship exists in this case.

■ A critical factor in determining the existence of an agency relationship is the degree of control exercised by the principal over the agent. *See In re Coupon Clearing Service, Inc.*, 113 F.3d 1091, 1099–1100 (9th Cir.1997). If the principal has the right to control the agent's day-to-day operations, then an agency relationship exists. *See Id.* If, however, the principal has no control over the day-to-day operations and only has right to dictate the end result of the agents activities, then an "independent contractor" relationship exists. *See Id.*

In this case, there is no evidence that Dollar has the "right to control" Galactic's day-to-day activities. Dollar does not decide where Galactic finds the products it imports,

what type of products it buys, who it buys the products from, or how much it pays. Under these circumstances, Dollar's classification of Galactic as an "agent" is inconsequential. Dollar simply does not have the requisite degree of control over Galactic to establish an agency relationship.

With this as a framework, the Court is not convinced that Dollar's use of a California importer demonstrates "deliberate action" toward the forum state. Dollar relies on over a 1,000 vendors from around the country to supply the products that it sells at its stores in the southeastern and midwestern United States. (Def's Reply Mem. at 9). The fact that one of these vendors happens to be incorporated in California does not mean that Dollar has "purposefully availed" itself to the benefits of doing business in California. The "purposeful availment" prong is designed to protect nonresident defendants from being haled into court based on "random" and "attenuated" contacts. In the Court's opinion, Dollar's relationship with Galactic is too "attenuated" a contact with California to provide this Court with jurisdiction

### a. The Effects Doctrine

In the alternative, Figi argues that the "purposeful availment" requirement can be satisfied through the use of the "effects doctrine." Figi argues that the effects doctrine applies to this case because the "effect" of Dollar's alleged infringement, including lost profits and damage to reputation, will be suffered by Figi in California. The Court disagrees.

 The effects doctrine is generally reserved for *tort* cases in which the plaintiff demonstrates (1) intentional actions by the defendant, (2) expressly aimed at the forum state, and (3) causing harm which the defendant knows is likely to be suffered in the forum state. *See Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir.1998). Although the Ninth Circuit has employed the "effects doctrine" to cases other than torts, it is limited to situations in which the defendant acts "intentionally" and the facts are "akin to a tort." *See Id.*

In *Panavision*, the Ninth Circuit applied the effects doctrine to a trademark infringement case because it found the facts of the

case sufficiently analogous to an intentional tort. *See Id.*, at 1322. In that case, the defendant infringed upon Panavision's trademarks for the purpose of extorting money from Panavision. *Id.* Based upon the intentional acts, the Ninth Circuit found that the effects doctrine applied. *See Id.* The Court noted, however, that the effects test would not apply to a straightforward trademark infringement case. *See Id.* Instead, the effects test requires "something more." *Id.* The "something more" is an intentional act by the defendant directed at the plaintiff in the forum state. *See Id.*

 In this case, Figi failed to present any evidence demonstrating that Dollar "intentionally" infringed upon Figi's copyrights. Simply proving that Figi will feel the "effects" of the alleged infringement in California is not sufficient. The effects doctrine requires "something more," namely an "intentional" act. Figi has failed to present such evidence. Accordingly, the effects doctrine has not been satisfied in this case.

### 2. Arising Out of

The second prong of the jurisdiction test requires that the claim "arise out of" the defendant's forum-related activities. This part of the test is satisfied if the plaintiff would not have been injured "but for" the defendant's forum related contacts. *See Terracom v. Valley National Bank*, 49 F.3d 555, 561 (9th Cir.1995).

Here, Figi argues that it would not have been injured "but for" Dollar's use of a California import company. This assertion, however, is questionable. The source of Figi's injury is not Dollar's relationship with Galactic, but Dollar's *sale* of allegedly infringing goods. Dollar sells its products almost exclusively in the midwestern and southeastern United States. As a result, Figi's injuries do not "arise out of" Dollar's California related activities.

### 3. Reasonableness

The third prong of the jurisdiction test requires that the exercise of jurisdiction be "reasonable." In determining whether jurisdiction over a nonresident defendant is "reasonable," the Ninth Circuit requires the dis-

trict court to balance the following seven factors:

 (1) the extent of the defendant's purposeful interjection into the forum state's affairs;

 (2) the burden on the defendant of defending in the forum;

 (3) the extent of conflict with the sovereignty of the defendant's state;

 (4) the forum state's interest in adjudicating the dispute;

 (5) the most efficient judicial resolution of the controversy;

 (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and

 (7) the existence of an alternative forum.

*See Terracom,* 49 F.3d at 561.

 ■ The first factor regarding purposeful interjection is similar to the purposeful availment test discussed above. However, "even if there is sufficient 'interjection' into the state to satisfy the [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the [reasonableness prong]." *Core–Vent Corp.,* 11 F.3d at 1488. In this case, the only interjection is a *single* sale to a private investigator hired by Figi and the use of a California importer. Given that Dollar uses over 1,000 vendors and sells the vast majority of its products in the southeastern United States, the Court finds that Dollar's interjection into California is relatively minor. Accordingly, the first factor favors Dollar.

 The second factor deals with the defendant's burden of litigating in the forum state. Here, the burden on Dollar and its witnesses in traveling to California to litigate this issue is equal to the burden that would be placed on Figi and its witnesses in traveling to Kentucky. Where the burdens are equal, the second factor tips in favor of Dollar because the law of personal jurisdiction is "primarily concerned with the defendant's burden." *Terracom,* 49 F.3d at 561.

 The third factor concerns the extent to which the Court's exercise of jurisdiction in California would conflict with the sovereignty of Kentucky. This factor is not an issue in this case because Figi's claims involve federal copyright law. Consequently, the analysis would be the same in either California or Kentucky.

 The fourth factor deals with the forums interest in adjudicating the dispute. California maintains a strong interest in "protecting its citizens from the wrongful acts of nonresident defendants." *Ziegler,* 64 F.3d at 475. Here, California has a valid interest in protecting Figi, a California corporation, from being injured by Dollar's alleged copyright infringement. As a result, the balance of this factor tips in favor of Figi.

 The fifth consideration focuses on the location of the evidence and witnesses. The Ninth Circuit has stated that given the advances in communication and transportation, this factor is no longer weighed heavily. *See Panavision,* 141 F.3d at 1323. In this case, the location of the evidence and witnesses appears to be split evenly between the parties. The witnesses who could testify for Figi regarding the creation of the artwork are located in California whereas the witnesses who could testify regarding the sale of the infringing products are in Kentucky. As a result, this factor is neutral.

 The sixth factor addresses the effectiveness of relief for Plaintiff. Although it would be more convenient for Figi to litigate this case in California, nothing in the record suggests that effective relief is not available in Kentucky. As a matter of fact, Figi has already litigated and settled a similar suit in Kentucky. In addition, "neither the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience to the plaintiff." *Id.,* at 490. This factor therefore is neutral.

 The final factor is the availability of an alternate forum. "The plaintiff bears the burden of proving the unavailability of an alternate forum." *Id.* Figi has not demonstrated that its copyright action cannot be litigated in Kentucky. Accordingly, this factor goes to Dollar.

 In sum, all of the factors, except factor four, are either neutral or favor Dollar. In a situation such as this where the balance of the seven factors overwhelmingly favors Dollar, it would be unreasonable for this Court to exercise jurisdiction over Dollar.

## III. Conclusion

Figi has failed to establish that Dollar has "minimum contacts" with California such that the maintenance of this suit would not offend due process. Accordingly, the exercise of personal jurisdiction is improper, and Dollar's Motion to Dismiss is GRANTED.

**IT IS SO ORDERED.**