**COGNITRONICS IMAGING SYSTEMS, INC., Plaintiff,**

v.

**RECOGNITION RESEARCH INCORPORATED, Captiva Software Corporation, Defendants.**

**No. Civ.A. 99CV1320.**

United States District Court, E.D. Virginia, Norfolk Division.

Feb. 8, 2000.

Andrew David Skale, Baker & Botts, LLP, Washington, DC, Thomas J. Harlan, Jr., Harlan & Flora, P.C., Norfolk, VA, for plaintiff.

Charles D. Ossola, Arnold & Porter, Washington, DC, for defendant Cognitronics.

Terence Murphy, Kaufman & Canoles, Norfolk, VA, Charles Roberts, C.J. Veverka, Workman, Nydegger & Seeley, Salt Lake City, UT, for defendant Captiva.

## MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on Captiva Software Corporation's motion to transfer venue to the Southern District of California, pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the motion is **GRANTED.**

### I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, Cognitronics Imaging Systems, Inc. ("Cognitronics"), filed a complaint in the Eastern District of Virginia, on August 18, 1999, seeking relief from defendants, Recognition Research Incorporated ("RRI") and Captiva Software Corporation ("Captiva"), for their alleged infringement of Patent No. 5,526,447 ("'447 patent"). On June 11, 1996, Cognitronics was issued the '447 patent for Batched Character Image Processing, a product invented by David H. Shepard, Chief Executive Officer of Cognitronics, and thereafter assigned by Shepard to Cognitronics. RRI and Captiva have utilized Batched Character Image Processing in the sale and distribution of their own software, Form-

Works/ClaimWorks and FormWare/Genesis, respectively. Cognitronics asserted a cause of action for willful infringement, inducing infringement, and contributory infringement of the '447 patent, in violation of 35 U.S.C. § 271. Cognitronics also asserted state law claims against both RRI and Captiva for combining and conspiring to injure the business of Cognitronics by willfully infringing the '447 patent, in violation of Va.Code § 18.2–499 and the common law prohibition against civil conspiracy.

Cognitronics is a California corporation with its principal place of business in San Diego. Captiva is also a California corporation with its corporate headquarters and principal place of business in San Diego. Similarly, the inventor of the patented product at issue in this case, David H. Sheppard, is a resident and domiciliary of Coronado, California, an oceanfront suburb of San Diego. Defendant RRI is a Virginia corporation with its principal place of business in Blacksburg, in the Western District of Virginia.

Based upon the foregoing, Captiva moved to transfer venue from the Eastern District of Virginia to the Southern District of California, pursuant to 28 U.S.C. § 1404(a). Defendant RRI filed a memorandum in support of the motion to transfer. A hearing on defendant's motion was held before this court on November 17, 1999, at which time counsel for Cognitronics challenged whether venue in the Southern District of California would be proper as to all defendants. Cognitronics asserted for the first time at oral argument that venue would not have been proper as to RRI in the Southern District of California at the time the suit was initiated. Accordingly, Cognitronics asserted that the Southern District of California would not be a proper forum for this case. The court granted the parties time to file supplemental briefs on this narrow issue and took the matter under advisement. The matter is now ripe for decision.

## II. ANALYSIS

Title 28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." After thorough review of the record in this case, the court finds that this case could, indeed, have been initiated in the Southern District of California and, therefore, may be transferred to that district in accordance with 28 U.S.C. § 1404(a).

### A. *Proper Venue*

■ Venue as to patent infringement claims is governed by 28 U.S.C. § 1400(b), which states in relevant part, "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides." For venue purposes, a corporate defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a state which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation is deemed to reside in any district within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(c). *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed.Cir.1990). California's long-arm statute, which governs the exercise of personal jurisdiction in the federal courts of that state, authorizes a court to exercise personal jurisdiction to the full extent permitted by the Due Process Clause of the United States Constitution. *See* Cal.Civ. Proc. § 410.10; *see also, Figi Graphics, Inc. v. Dollar General Corp.*, 33 F.Supp.2d 1263, 1265 (S.D.Cal.1998). Provided, therefore, that the defendants' contacts with the Southern District of California are such that the exercise of personal jurisdiction over them by that district would not violate due process if the Southern

District of California were its own independent state, venue would be proper as to all defendants in the Southern District of California, and the case could be transferred pursuant to 28 U.S.C. § 1404(a).

As a California corporation, with its principal place of business in San Diego, Captiva would clearly be subject to personal jurisdiction in a Southern District of California court. Moreover, based upon the affidavits and exhibits submitted by RRI in support of the motion to transfer, it is apparent that RRI's contacts with the Southern District of California are such that RRI would also be subject to personal jurisdiction in that district.

■ "In order to satisfy due process, a defendant must have 'minimum contacts' with the forum state such that the maintenance of the suit 'does not offend the traditional notions of fair play and substantial justice.'" *Figi Graphics, Inc.*, 33 F.Supp.2d at 1265 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The requisite minimum contacts necessary to establish general jurisdiction exist when a defendant is domiciled in the forum or conducts activities in the forum that are "substantial" or "continuous and systematic." *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). RRI and Captiva apparently do not dispute that RRI's business activities in the Southern District of California are not so extensive or "substantial" as to subject RRI to general personal jurisdiction in that district.

Captiva, however, argues that RRI may nonetheless be subject to general personal jurisdiction in the Southern District of California. The Supreme Court's decision in *Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 95, 37 S.Ct. 344, 61 L.Ed. 610 (1917), is frequently cited for the proposition that a state may exercise general jurisdiction over any foreign corporation that registers to do business in that state and thereby consents to service of process upon a designated agent within the state, even where the cause of action arises outside the forum.[1] Although the Supreme Court affirmed this principle in 1939, *see Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 170–71, 60 S.Ct. 153, 84 L.Ed. 167 (1939), the Court's decision in *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), cast doubt on the continued viability of these cases. After *International Shoe*, the focus shifted from whether the defendant had been served within the state to whether the defendant's contacts with the state justified the state's assertion of jurisdiction. *Compare Pennoyer v. Neff*, 95 U.S. 714, 722, 5 Otto 714, 24 L.Ed. 565 (1877), *with International Shoe*, 326 U.S. at 316, 66 S.Ct. 154.

The Supreme Court has not yet addressed whether registration alone would be sufficient to confer general personal jurisdiction in light of its holding in *International Shoe*, and lower courts confronting the issue have taken widely divergent approaches to resolving the issue. A number of courts have held that, in light of the sweeping language in *Shaffer v. Heitner*, 433 U.S. 186, 212, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) ("[A]ll assertions of

---

1. Notably, while Justice Holmes did not address any of Pennsylvania Fire Insurance Company's contacts with the forum, other than its registration and consent to service of process, the lower court's decision rested, in part, upon the premise that companies subject to suit on the basis of registration were conducting business in the forum and maintained offices, agents, and attorney's in the forum. *See Gold Issue Min. & Mill. Co. v.* *Pennsylvania Fire Ins. Co.*, 267 Mo. 524, 184 S.W. 999, 1020 (1916), *aff'd* 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610 (1917). It is questionable, therefore, whether the case stands for the broad proposition for which it is most frequently cited—that registration alone is sufficient to confer general personal jurisdiction. It is even more questionable given the progeny of Supreme Court cases that follow *Pennsylvania Fire Ins. Co. See infra* at 692–93.

state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny"),[2] a complete "minimum contacts" analysis must be undertaken, even where the corporation has registered to conduct business in the state, before jurisdiction may be asserted over a foreign corporation for a cause of action arising outside the forum. *See, e.g., Leonard v. USA Petroleum Corp.*, 829 F.Supp. 882, 889 (S.D.Tex.1993); *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 182 (5th Cir.1992); *In re Mid–Atlantic Toyota Antitrust Litig.*, 525 F.Supp. 1265, 1278 (D.Md.1981); *Schreiber v. Allis–Chalmers Corp.*, 611 F.2d 790, 793–94 (10th Cir.1979); *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 748 (4th Cir.1971) ("The principles of due process require a firmer foundation than mere compliance with state domestication statutes.").

Other courts, however, have exercised general jurisdiction on the basis that a registered corporation consents to jurisdiction, obviating the need for due process analysis, or that registration to do business is *per se* sufficient evidence upon which to conclude that the corporation has the necessary "minimum contacts" to satisfy due process. *See, e.g., Continental Casualty Co. v. American Home Assurance Co.*, 61 F.Supp.2d 128, 129–30 (D.Del.1999); *Bane v. Netlink, Inc.*, 925 F.2d 637, 640–41 (3d Cir.1991) (holding that registration consti-

tuted consent to suit on any cause of action and *per se* sufficient contacts to support the exercise of general jurisdiction); *Wheeling Corrugating Co. v. Universal Constr. Co., Inc.*, 571 F.Supp. 487, 488 (N.D.Ga.1983); *In re FTC Corporate Patterns Report Litig.*, 432 F.Supp. 274, 286 (D.D.C.1977); *Sternberg v. O'Neil*, 550 A.2d 1105, 1113 (Del.1988) ("[I]f a foreign corporation has expressly consented to jurisdiction of a state by registration, due process is satisfied and an examination of 'minimum contacts' to find implied consent is unnecessary.").[3]

Relying on the logic and interpretation of precedent underlying these latter cases, Captiva argues that the Southern District of California would have general personal jurisdiction over RRI strictly by virtue of RRI's qualification to transact intrastate business in California. Indeed, RRI has registered with the State of California in accordance with all requirements of Cal. Corp.Code § 2105,[4] been assigned a tax identification number, and received a license to transact business anywhere within the state, including the Southern District of California, as of July, 1999. (Bixler Decl. ¶¶ 2, 8, 9; Fogarty Decl.Ex. A).

■ While, as Captiva urges, RRI may indeed be subject to the general jurisdiction of the California courts strictly by virtue of compliance with California's reg-

---

**2.** In the last paragraphs of the opinion, however, the Court suggested that, in the case under consideration, a statute containing language of consent would have provided a proper basis for jurisdiction, even if the defendants did not have any other contacts with the state and the cause of action arose outside the state: "Delaware, unlike some States, has not enacted a statute that treats acceptance of a directorship as consent to jurisdiction in the State." *Shaffer*, 433 U.S. at 216, 97 S.Ct. 2569. Although the Court did not refer specifically to foreign corporation qualification statutes, it left open the possibility that registration statutes, generally, may still be viable to confer general jurisdiction after *Shaffer*. *See id.*

**3.** Also, the Supreme Court in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 446 n. 6, 72 S.Ct. 413, 96 L.Ed. 485 (1952), cited *Pennsylvania Fire Ins. Co.* and the appointment of a statutory agent as an instance in which "continuous corporate operations within a state" are of "such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities," suggesting that registration constitutes *per se* minimum contacts.

**4.** Cal.Corp.Code § 2105(5)(A) requires all foreign corporations qualifying to transact intrastate business in California to state irrevocable consent to service of process upon a registered agent or upon the Secretary of state, if the agent cannot be found.

istration statute,[5] this court need not join the ongoing constitutional debate to resolve the limited question presently before this court. Even where a non-resident defendant's contacts with the forum state are not sufficiently pervasive to justify the exercise of general jurisdiction and there has been no "consent" to suit, a district court may still have specific jurisdiction over the defendant where, as here, the cause of action arises out of the defendant's activities within the forum. *See International Shoe Co.*, 326 U.S. at 317, 66 S.Ct. 154. Specific jurisdiction comports with due process if: (1) the defendant has undertaken some activity in which it has purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its law, (2) the claim arises out of the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *See 3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1378 (Fed.Cir.1998) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

■ Examining the business activities actually undertaken by RRI in the Southern District of California, pursuant to its registration to conduct business within the state, it is apparent that RRI's business contacts and the alleged infringing activities undertaken in the Southern District of California would permit that court to exercise specific jurisdiction over RRI for purposes of this lawsuit, even if RRI were not subject to general jurisdiction on the basis of its registration alone.

RRI has had at least two significant business contacts pertaining to their sale and distribution of the allegedly infringing products since the issuance of the patent-in-suit. First, RRI participated in, attended, and exhibited its products, including the allegedly infringing optical character recognition products, at the Health Insurance Association of America ("HIAA") trade show in San Diego, California in November, 1998. (Supplemental Bixler Decl. ¶¶ 2–3). During the HIAA show, RRI distributed sales literature advertising for sale RRI's ClaimWorks processing system, software specifically alleged in plaintiff's complaint to infringe the patent-in-suit, and inviting HIAA conference attendees and healthcare executives to visit RRI's display booth to review the ClaimWorks system. (Supplemental Bixler Decl.Exs. 5 & 6). Not only did RRI make allegedly infringing offers to sell in the Southern District of California, but this activity resulted in contract negotiations. (Supplemental Bixler Decl. ¶ 4). RRI is currently in negotiations with Midwest Security, a company with which initial contact was made at the HIAA show. (Supplemental Bixler Decl. ¶ 4).

Cognitronics argues that RRI's marketing activities at the HIAA trade show should not qualify as an act of alleged infringement, as it asserts that the sale of demonstrated products is not always central to the purpose of such trade shows. Rather, analogizing to auto shows and bar conventions, Cognitronics argues that these shows are sometimes successful only to the extent that they provide an opportunity to network. However, J. Patrick Bixler, RRI's president, chief executive officer, and chairman since 1989, has submitted by sworn affidavit that RRI did in fact display, offer for sale, and distribute sales literature regarding the allegedly infringing optical character recognition programs. (Supplemental Bixler Decl. ¶¶ 2–3). Contrary to Cognitronics' assertions, Bixler's sworn affidavit does not become incompetent merely because he did not physically attend the trade show or because his statement regarding RRI's pur-

---

**5.** The law of the Federal Circuit is controlling for purposes of determining whether the exercise of personal jurisdiction comports with the due process clause of the United States Constitution in patent cases. *See 3D Systems,* *Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed.Cir.1998). The Federal Circuit has not yet ruled on whether registration alone may confer general personal jurisdiction.

pose in attending is not supported by voluminous documentation. As previously indicated, Mr. Bixler is the president, chief executive officer, and chairman of RRI. His Visa credit card account was used to pay for the rental of the display booth for participation in the HIAA show, and subsequent contract negotiations that arose out of the HIAA trade show were addressed to his attention. (Supplemental Bixler Decl.Exs. 1, 6, 7). Moreover, Bixler's declaration is, in fact, bolstered by accompanying exhibits, including sales literature distributed at the HIAA showing, a list of attendees, including Midwest Security Insurance, and subsequent contract negotiations for the sale of the allegedly infringing products between RRI and Midwest Security. (Supplemental Bixler Decl.Exs. 3, 4, 5, 6, 7).

RRI's actions at the trade show in San Diego constitute exactly the type of "demonstrating, using, and marketing" alleged to infringe the patent-in-suit. (Compl.¶ 26). As the activity giving rise to the cause of action occurred in the Southern District of California, if it were a separate state, the Southern District of California could constitutionally exert personal jurisdiction over RRI for purposes of this lawsuit on the basis of these activities.

Secondly, RRI entered into a Software Evaluation Agreement with Optimal Integrated Solutions of Calsbad, California, which is also located in the Southern District of California. (Supplemental Bixler Decl. ¶ 5, Ex. 9). That agreement involved the loan and licensure of the allegedly infringing optical character recognition products for use in the Southern District of California. (Supplemental Bixler Decl. Ex. 9). The express purpose of the loan and licensure agreement was to permit Optimal Integrated Solutions an opportunity to "evaluate" certain of the products that RRI markets for sale, including the

allegedly infringing FormWorks software. (Supplemental Bixler Decl.Ex. 9). Cognitronics urges that as the agreement, on its face, does not offer to sell anything to Optimal Integrated Solutions, this court should find that RRI merely agreed to allow Optimal Integrated Solutions to "borrow" the software at issue without engaging in any allegedly infringing activity. However, it is highly unlikely that RRI gratuitously loaned to Optimal Integrated Solutions a variety of products that RRI also just so happens to offer for sale. Rather, consistent with the express purpose articulated in the "Software Evaluation Agreement," RRI licensed the software to Optimal Integrated Solutions for a limited period of time to allow the company to evaluate the products RRI offered for sale and to determine their compatibility with the needs of Optimal Integrated Solutions. Certainly, this agreement, though not articulated in express offer and acceptance terminology, was in essence an offer to sell the allegedly infringing software under 35 U.S.C. § 271. Moreover, this same agreement arguably constitutes an inducement to the licensee to use the allegedly infringing software, also in violation of 35 U.S.C. § 271. *See Digital Equipment Corp. v. Electronic Memories & Magnetics Corp.*, 452 F.Supp. 1262, 1265 (D.Mass.1978) (citing 35 U.S.C. § 271) ("An act of infringement occurs when an unauthorized party makes, uses or sells a patented invention or induces another to do so."); *Amburn v. Harold Forster Industries, Ltd.*, 423 F.Supp. 1302, 1303 (E.D.Mich.1976) (noting that patent infringement occurs where an "infringing article is sold or used or where infringement is induced").[6]

Whether characterized as an offer for sale or an inducement to infringe, the agreement with Optimal Integrated Solu-

---

**6.** Cognitronics argues that the act of inducement, if it exists, occurred in Virginia where the software was manufactured and where the shipping to California took place. However, the court notes it is equally, if not more persuasive, that the actual inducement occurred where Optimal Integrated Solutions received and was intended to use the allegedly infringing products, in the Southern District of California.

tions, as well as RRI's participation in the HIAA trade show in San Diego, California, establish "minimum contacts" with the forum from which the present cause of action arose, so that subjecting RRI to suit in the Southern District of California would be consistent with constitutional notions of "fair play" and "substantial justice." These contacts, in conjunction with RRI's registration to conduct business anywhere within the state of California, are clearly sufficient to allow the constitutional exertion of personal jurisdiction over RRI for purposes of this lawsuit.

As personal jurisdiction exists, the Southern District of California would be a "judicial district where the defendant" resides for purposes of 28 U.S.C. § 1400(b) so that venue could have been properly laid there at the inception of this lawsuit and may now be transferred there pursuant to 28 U.S.C. § 1404(a), if convenience and justice so dictate.

B.  *The Logical and Convenient Forum*

■ While derived in part from, and drafted in accordance with, the common law doctrine of *forum non conveniens*, 28 U.S.C. § 1404(a) is broader and grants district courts more discretion to transfer cases than the common law doctrine. *See, e.g., Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Akers v. Norfolk & W Ry Co,* 378 F.2d 78, 79 (4th Cir.1967). "The decision whether to transfer an action [under § 1404(a) ] is committed to the sound discretion of the district court." *Verosol B.V. v. Hunter Douglas, Inc.,* 806 F.Supp. 582, 592 (E.D.Va.1992) (citing *Southern Ry. Co. v. Madden,* 235 F.2d 198, 201 (4th Cir. 1956)). In determining whether to grant a motion under § 1404(a), a court must consider and balance a number of factors, including ease of access to sources of proof; the convenience of the parties and witnesses; the cost of obtaining the at-

tendance of witnesses; the availability of compulsory process; the interest in having local controversies decided at home; in diversity cases, the court's familiarity with the applicable law; and the interest of justice. *See Reynolds Metals Co. v. FMALI, Inc.,* 862 F.Supp. 1496, 1501 (E.D.Va.1994) (citing *Verosol B.V. v. Hunter Douglas, Inc.,* 806 F.Supp. 582, 592 (E.D.Va.1992)); *Board of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.,* 702 F.Supp. 1253, 1256 (E.D.Va.1988). The burden to show that a transfer is proper rests on the movant. *See Verosol,* 806 F.Supp. at 592. However, when "a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight." *Id.; see also Chedid v. Boardwalk Regency Corp.,* 756 F.Supp. 941, 945 (E.D.Va.1991); *Baylor,* 702 F.Supp. at 1256. "A plaintiff's choice of forum, while usually entitled to substantial weight, is here of little moment because it is neither plaintiff's nor defendants' home forum." *Corry v. CFM Majestic Inc.,* 16 F.Supp.2d 660, 666 (E.D.Va.1998).

■ Captiva, in support of its motion to transfer, points to the following considerations: (1) Captiva's witnesses, most of whom are party witnesses, are located in the Southern District of California, (Bish Decl. ¶ 3); (2) Cognitronics' headquarters and known witnesses, including the inventor of the patented material at issue, David H. Shepard, are located in the Southern District of California; (3) many of the discoverable documents that will be relevant and necessary to this case are located primarily at Captiva's and Cognitronics' corporate headquarters in the Southern District of California,[7] (Bish Decl. ¶¶ 4–5); (4) many of the operative facts including the design, development, manufacture, and distribution of the alleged infringing prod-

---

7.  Cognitronics argues that it has copies of relevant documents "on both coasts." Notably, however, the existence of documents on both coasts hardly equates to evidence located in the Eastern District of Virginia.

ucts occurred in the Southern District of California, (Bish Decl. ¶ 4); and (5) though RRI is not headquartered in the Southern District of California, neither is it headquartered in the Eastern District of Virginia, so that the location of RRI does not weigh in favor of either district. Moreover, RRI supports the motion to transfer the case to the Southern District of California and agrees that most of the witnesses and the weight of the evidence will be found in that district. Accordingly, Captiva, with the support of RRI, argues that the plaintiff has foregone litigating this case in the forum most relevant to the facts in question and most convenient to the parties and witnesses, in favor of the speed and efficiency of this court's so-called "rocket docket." [8] Both defendants request that the case be transferred to the more appropriate district in California.

Cognitronics has pointed to a number of connections between this case and the Eastern District of Virginia, all of which are tenuous, at best: (1) RRI is a Virginia corporation and maintains one sales office within this district from which the product in question has presumably been sold, so that some evidence, albeit little, of damages may be found in the Eastern District of Virginia; (2) the contract entered by Captiva with Lockheed Martin Federal Systems for sale of the FormWorks software was entered in Manassas, Virginia,[9] again providing some evidence of damages; (3) presumably, "channel partners" of Captiva located in or doing business in this district may have evidence related to damages; (4) evidence regarding the effect of the infringement on Cognitronics' sales may be found in this district because they used to have an office here and still maintain one independent contractor in the district; and (5) local chapter meetings of an industry trade association named TAWPI (The Association for Work Process Improvement) have been held in Tyson's Corner, Virginia, and have been hosted by defendants on limited occasions.[10]

In addition to the tenuous connections to this district set forth above, Cognitronics urges that the following legal and equitable considerations favor denying the transfer motion and retaining this case in the Eastern District of Virginia: (1) plaintiff has east coast counsel; (2) because David Shepard, a key witness, is elderly and may not survive lengthy litigation in the Southern District of California, justice requires that the case remain on this district's expedient docket; [11] and finally, (3) plaintiff has raised state law conspiracy claims with which a Virginia court would have greater familiarity.

Few, if any, of the connections that Cognitronics attempts to create between this case and the Eastern District of Virginia truly favor maintaining venue in this jurisdiction. First, while Cognitronics is correct that RRI is a Virginia corporation, it is located in the Western District of Virginia and does not strengthen the connection between the controversy at hand and this court. Further, as noted above, the only major contract involving the infringing products which plaintiff has specifically identified as a significant connection to the

---

8.  Indeed, it appears from the briefs and supporting materials offered by all parties to this case that Cognitronics' decision to initiate this case in the Eastern District of Virginia was heavily motivated by the expediency of the docket in this district. *See infra* note 11.

9.  Plaintiff's argument, however, rests on a faulty premise. While Lockheed Martin does have an office in Manassas, Lockheed's U.S. Census contract with Captiva is handled by Lockheed's Gaithersburg, Maryland office, not its Manassas, Virginia office. (Shepard Decl.Ex. C).

10. Captiva notes that a "host" of a TAWPI meeting is in fact little more than an invited guest speaker who is asked to cover certain expenses. (Bish Decl. ¶ 10).

11. This court notes, however, that plaintiff has made no showing of any lack of expediency of the docket in the Southern District of California, and this court does not consider the docket factor at all persuasive.

Eastern District of Virginia is the contract entered with Lockheed Martin Federal Systems. Again, however, that contract was actually handled by Lockheed's Gaithersburg, Maryland office and does nothing to establish a connection to this district. (Shepard Decl.Ex. C).

Plaintiff's presumption that Captiva's "channel partners" conduct business in this district and may have evidence related to the damages appears, as an initial matter, to be nothing more than a hunch and, furthermore, is largely rebutted by the evidence offered in support of the motion to transfer. Despite plaintiff's "presumptions," only three of Captiva's forty-nine channel partners are apparently located in Virginia, and of these three, none has ever made a sale to a client in Virginia. (Bish Decl. ¶ 9).

Moreover, plaintiff's attempt to maximize the importance of the TAWPI meetings that have been held in Tyson's Corner on occasion is also unavailing. This is just one of many meetings of one industry trade association. In fact, I. Reynolds Bish, Chairman and CEO of Captiva, has testified that Captiva is not even a member of the Mid–Atlantic Chapter of TAWPI and that, while he has been invited to speak at these meetings on occasion, these meetings represent an insignificant part of the defendants' business or marketing activities.[12] (Second Bish Decl. ¶¶ 4, 10). Plaintiff does not increase the significance of these few meetings by noting that the defendants once used the forum provided by the TAWPI meetings to inquire as to whether any other members of the industry were aware of any "prior art" displays of the software in issue.[13] Defendants simply seized an opportunity to address a number of industry participants who happened to be in the Virginia area for one trade show. The participants have since dispersed, and there is nothing before this court to suggest that Tyson's Corner is now a "hotbed" of potential evidence in this case, simply because some relevant conversation was had at one meeting in the past.

Cognitronics' contacts with the Eastern District of Virginia are also insubstantial. By plaintiff's own admission, Cognitronics' Virginia office has closed, and only one independent contractor remains in the area. Clearly the connections between this district and the case in issue are minimal, and plaintiff's additional legal and equitable arguments in favor of retaining venue in this district are likewise insufficient to overcome the marked lack of any significant link between this district and the operative facts and witnesses to this controversy.

■ Plaintiff's argument that the cost of transporting East Coast counsel to litigate a case in the Southern District of California would pose an undue hardship on their limited financial resources raises an improper consideration before this court. The convenience to counsel is not an appropriate matter for consideration in resolving the appropriateness of a motion to transfer venue. *See Burstein v. Applied Extrusion Technologies, Inc.,* 829 F.Supp. 106, 112 (D.Del.1992) (citing *Solomon v. Continental American Life Ins. Co.,* 472 F.2d 1043, 1047 (3d Cir.1973)). If Cognitronics chooses to retain New York counsel to pursue the present claims, it cannot be heard to complain about the costs.

---

**12.** Only between 1.5–2.05% of Captiva's sales of FormWare have occurred in Virginia in the last two years. (Bish Decl. ¶ 7). Captiva has had no sales of Genesis in Virginia. (Bish Decl. ¶ 7). Moreover, the development, design, manufacture, and distribution of these products takes place almost exclusively from Captiva's corporate headquarters in San Diego, California and Park City, Utah. (Bish Decl. ¶ 4).

**13.** The court notes that the prior art display that Captiva has alleged, and about which Captiva made inquiry during the TAWPI meeting, is stated to have occurred at a trade show in California. (Shepard Decl. ¶ 24; Exs. F, G).

Moreover, this court has previously addressed the claim that this court's docket should be a consideration:

> "Docket conditions, while a consideration, cannot be the primary reason for retaining a case in this district. This Court cannot stand as a willing repository for cases which have no real nexus to this district. The 'rocket docket' certainly attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner."

*Schlegel U.K. Holdings Ltd. v. Cooper Tire & Rubber Co., Inc.,* no. 970522–A, slip op. at 18 (E.D.Va. June 10, 1997).[14]

■ Finally, while Cognitronics correctly argues that, where a significant question of state law exists, the interest in having that conflict resolved by a court readily familiar with the substantive law applicable to that claim may be a significant consideration, *see, e.g., Hardee's Food Sys., Inc. v. Rosenblatt,* 44 F.Supp.2d 767, 771 (E.D.N.C.1998), plaintiff's state law conspiracy claims cannot be the determinative factor in the resolution of the present transfer motion. *See General Foam Plastics Corp. v. Kraemer Export Corp.,* 806 F.Supp. 88, 90 (E.D.Va.1992) (Although preferable to have a case involving state

law issues decided by a court familiar with the substantive law applicable, "the choice of law factor is not controlling."). The connection between this district and the case at hand is so tenuous and the balance of applicable factors weighs so heavily in favor of transfer, that it would defy logic to permit defendant's transfer motion to be defeated by Cognitronics tacking on state law conspiracy claims that essentially mirror the federal patent infringement claims in this case. Moreover, without deciding Captiva's outstanding motion to dismiss plaintiff's state law conspiracy claims, there is a strong body of case law which would suggest that Captiva's state law conspiracy claims would be preempted by federal law.[15] Given the questionable viability of these claims, it would be unsound for this court to deny the motion to transfer on the mere basis that these claims have been raised.

At best, there is a possibility that Captiva and RRI have made some sales in this district of the products at issue and that there may, consequently, be some evidence of damages located within this district. While it is certainly undisputed that there are also connections between the software industry and Tyson's Corner, Virginia,

---

14. *See supra* notes 8 & 11 and accompany text. Further, if the health of a key witness is a concern, then Cognitronics can move forthwith to take the video *de bene esse* deposition of the witness. *See* Fed.R.Civ.P. 32(a)(3).

15. Federal patent law will preempt state law claims unless those claims involve additional elements not found in the federal patent cause of action and the state law claims do not attempt to offer patent-like protection to subject matter addressed by federal law. *See Rodime PLC v. Seagate Technology, Inc.,* 174 F.3d 1294, 1306 (Fed.Cir.1999); *see also, e.g., Ernster v. Ralston Purina Co.,* 980 F.2d 743 (Fed.Cir.1992) (unpublished) ("If an infringer acts willfully, which might include involvement in a conspiracy, the Act permits a court to award treble damages ... Title 35 neither expressly nor implicitly authorizes additional and duplicative damages for conspiracy to infringe a patent."); *Rainville Co., Inc. v. Consupak, Inc.,* 407 F.Supp. 221, 223 (D.N.J. 1976) ("Evidence of conspiracy might be rele-

vant to the issue of punitive damages for willful, malicious action in a civil action, but would not constitute a separate ground for recovery."); *ENM Co. v. Transformer Manufacturers, Inc.,* 1977 WL 22711, 195 U.S.P.Q. 144 (N.D.Ill.1977) ("Certainly if the validity or infringement of a patent is involved, there could be no State cause of action, since § 1338 gives the Federal court exclusive jurisdiction over civil actions relating to patents. Furthermore, there is no statute in the federal laws concerning patents which gives rise to a cause of action for 'conspiracy.' "). As the court transfers venue to the Southern District of California, the court is divested of authority to resolve Captiva's outstanding motion to dismiss Cognitronics' state law conspiracy claims. However, the court notes that the probability that these state law claims may, in fact, be dismissed under federal law mitigates the concern that Virginia state law claims will be decided by a court unfamiliar with Virginia law.

these weak, non-specific connections hardly justify retaining this particular case in the Eastern District of Virginia, when the clear weight of the documentary and testimonial evidence to be presented in this case can be found where two of the three parties "reside" and where many of the operative facts actually arose—in the Southern District of California. Based upon the facts of this case, the Southern District of California provides the far more logical and convenient forum for resolution of this dispute.

## III.  CONCLUSION

For the reasons set forth above, the court **GRANTS** Captiva's motion pursuant to 28 U.S.C. § 1404(a) and **TRANSFERS** this case to the Southern District of California for all further proceedings.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel for all parties, and to forward the entire case file to the Southern District of California.

IT IS SO **ORDERED.**